DENIHAN ENTERPRISES, INC., Respondent, *v.* WILLIAM O'DWYER, as Mayor of the City of New York, et al., Constituting the Board of Estimate of the City of New York, et al., Appellants.

Argued March 8, 1951; decided May 24, 1951.

*John P. McGrath, Corporation Counsel* (*Harry E. O'Donnell, Reuben Levy* and *Benjamin Offner* of counsel), for appellants. I. The proposed condemnation proceedings to widen a public street and to acquire a site for a public parking garage and public park will result in relieving traffic congestion and in providing needed park space. Such acquisitions are clearly in the public interest and should therefore be approved as furthering a public purpose. (*Hesse v. Rath,* 249 N. Y. 436; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *Ambassador Management Corp.* v. *Incorporated Vil. of Hempstead,* 186 Misc. 74, 270 App. Div. 898, 296 N. Y. 666, 330 U. S. 835; *McSorley* v. *Fitzgerald,* 359 Pa. 264; *Parr* v. *Ladd,* 323 Mich. 592; *City of Richmond* v. *Dervishian,* 190 Va. 398; *Cleveland* v. *City of Detroit,* 324 Mich. 527; *Lowell* v. *Boston,* 322 Mass. 709; *Miller* v. *City of Georgetown,* 301 Ky. 241; *Matter of Murray* v. *La Guardia,* 291 N. Y. 320; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. 2d 316, 329 U. S. 772.) II. Where property is acquired by condemnation for a project which will serve a public purpose, it is not a valid objection that the project is to be privately operated or that incidental private benefit may result. (*Matter of Murray* v. *La Guardia,* 291 N. Y. 320; *Weitzner* v. *Stichman,* 271 App. Div. 255, 296 N. Y. 907; *Brown* v. *United States,* 263 U. S. 78; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. 2d 316; *Matter of Watkins* v. *Ughetta,* 273 App. Div. 969, 297 N. Y. 1002; *Ziegler* v. *Chapin,* 126 N. Y. 342; *Gerdes* v. *Reynolds,* 281 N. Y. 180; *Kalmanash* v. *Smith,* 291 N. Y. 142; *Knowles* v. *City of New York,* 176 N. Y. 430; *Hopkins* v. *Hanna,* 135 Misc. 750.)

*Raymond J. McGrover* for respondent. I. Triable issues are presented as to whether New York Life Insurance Company is the primary beneficiary and the public, at most, an incidental beneficiary in this plan, which requires exercise of the city's power of eminent domain and, therefore, should have public benefit, and not private benefit, as its dominating purpose. (*Matter of Mayor, Aldermen & Commonalty of City of N. Y.,* 99 N. Y. 569; *Nevins, Inc.,* v. *Kasmach,* 279 N. Y. 323; *Lowell* v. *Boston,* 111 Mass. 454; *Lucien Lelong, Inc.,* v. *Mohr & Co.,* 169 Misc. 560, 257 App. Div. 820; *Matter of Eureka Basin Warehouse & Mfg. Co.,* 96 N. Y. 42; *Matter of Deansville Cemetery*

*Assn.,* 66 N. Y. 569; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333.) II. The garage arranged for by this contract will be a storage garage rather than the transient parking type the Legislature must have intended when it enacted the enabling legislation. A storage garage is by nature a private commercial venture. (*Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *Ambassador Management Corp.* v. *Incorporated Vil. of Hempstead,* 186 Misc. 74, 270 App. Div. 898, 296 N. Y. 666, 330 U. S. 835; *City of Cleveland* v. *Ruple,* 130 Ohio St. 465.) III. The City of New York should be enjoined from carrying out the terms of the contract entered into with the insurance company as prayed for in the complaint, for the reason that said contract requires said city to enter into a lease for a term of fifty years whereas the New York City Charter prohibits said city from entering into a lease for longer than ten years with renewal for no longer than ten years. (*Matter of Tiffany,* 179 N. Y. 455; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33; *People* v. *Dwyer,* 215 N. Y. 46; *People ex rel. Leet* v. *Keller,* 157 N. Y. 90; *People ex rel. Savory, Inc.,* v. *Plunkett,* 295 N. Y. 180.) IV. In permitting the insurance company to stipulate so many terms favorable to itself it has become impossible for the City of New York to get the highest rental as is required of it by both chapter 453 of the Laws of 1949 and the New York City Charter ([1938], § 384, subd. b). (*Bell Tel. Co.* v. *Parker,* 187 N. Y. 299.)

*Francis X. Conlon* and *Sidney O. Raphael* for Shamrock Cleaners, Inc., *amicus curiæ,* in support of respondent's position. I. The complaint sufficiently alleges that the condemnation is not in the public interest and will result in a misuse of public funds. (*Navarro* v. *Fiorita,* 271 App. Div. 62; *Allcock* v. *Cohen,* 269 App. Div. 1050; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *Matter of Murray* v. *La Guardia,* 291 N. Y. 320; *Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249; *Matter of Long Sault Development Co.* v. *Kennedy,* 158 App. Div. 398.) II. The contract between the City of New York and the insurance company is discriminatory and prohibits competitive bidding.

*Harry H. Chambers* for Abraham B. Cox and others, *amici curiæ*, in support of respondent's position. I. The Desmond Act (L. 1949, ch. 453) violates the Federal and State Constitutions in that it authorizes the acquisition, by eminent domain, of private property for private use. (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *Matter of Hopper* v. *Britt,* 203 N. Y. 144.) II. The Desmond Act is unconstitutional insofar as it purports to authorize the condemnation of approximately 37% of the proposed garage site for " stores and other commercial facilities ", all of which are clearly without the declaration of public emergency. (*Ontario Knitting Co.* v. *State of New York,* 69 Misc. 145.) III. The issue as to whether the taking is for a private or public purpose involves mixed questions of fact and law, which may not be resolved upon a motion to dismiss, pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice. (*Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249; *Matter of Deansville Cemetery Assn.,* 66 N. Y. 569; *Matter of Long Sault Development Co.* v. *Kennedy,* 158 App. Div. 398, 212 N. Y. 1; *Matter of Mayor, Aldermen & Commonalty of City of N. Y.,* 135 N. Y. 253; *Nevins, Inc.,* v. *Kasmach,* 279 N. Y. 323.) IV. The contract is discriminatory and is so drawn as to discourage competitive bidding. (*Brady* v. *Mayor of City of N. Y.,* 20 N. Y. 312; *Grace* v. *Forbes,* 64 Misc. 130.) V. The threatened acts are such as to result in a waste of public funds. Prevention of competitive bidding is presumptive evidence of injury to the taxpayers. (*American La France & Foamite Corp.* v. *City of New York,* 156 Misc. 2, 246 App. Div. 699.) VI. The proposed use of the property, for garage and store purposes, would be illegal and violative of the city's own zoning resolution. (*O'Brien* v. *Town of Greenburgh,* 239 App. Div. 555, 266 N. Y. 582; *Brocoris Realty Corp.* v. *Village of Scarsdale,* 241 App. Div. 735; *Schwab* v. *Graves,* 221 App. Div. 357, 247 N. Y. 575.)

FROESSEL, J. In this taxpayer's action brought under section 51 of the General Municipal Law, plaintiff-respondent seeks to enjoin the City of New York and its board of estimate from carrying out a contract made with the New York Life Insurance Company, hereinafter called the Company. Special Term dismissed the complaint for legal insufficiency. The Appellate

Division unanimously reversed, denied the motion to dismiss, granted a temporary injunction, and certified to us the following question: "Was the order of Special Term, dated May 2, 1950, granting defendants' motion to dismiss the complaint, on which judgment was entered May 12, 1950, properly made?"

Under the contract challenged, the city agrees (1) to acquire by condemnation, pursuant to subdivision 3 of section 72-j of the General Municipal Law (L. 1949, ch. 453) about two thirds of the block (the easterly portion) bounded by East 64th and East 65th Streets, Second and Third Avenues, Manhattan; (2) to offer the same at public auction; (3) for a term of fifty years; (4) upon certain terms and conditions hereinafter referred to; (5) subject to conditions providing for the construction of a public parking garage, and (6) for commercial facilities.

The Company agrees to bid for the lease, as proposed, which shall be subject to the following conditions:

(a) The successful bidder shall construct on said real property a public parking garage (title to which shall vest in the city) accommodating at least 750 cars;

(b) the structure may include stores and other commercial facilities on the ground and basement floor along Second Avenue to a depth of 130 feet;

(c) the structure may not exceed 2 stories in height (with cellar and subcellar);

(d) the roof must contain 4 feet of sod, grass and planting;

(e) the initial rent shall consist of the total awards, interest and expenses of this condemnation as well as for a condemnation for widening East 65th Street 14 feet, plus taxes accruing between condemnation and the execution of the lease, $836,450 of which must be paid five days prior to such execution, and the balance five days after the amount thereof is certified by the city comptroller; in addition, there shall be paid an annual rental of at least $25,200;

(f) the successful bidder (lessee) shall remove all tenants (of which there are more than 100);

(g) the city agrees to rezone "for the purposes of the said lease" the area condemned;

(h) the south half of the landscaped roof shall be improved "as a public sitting park";

(i) the lessee may determine the amount of space allotted for " storage or transient use ", but " shall consider " the following recommendations of the traffic commission:

" This garage will fill a need for storage space for the automobiles owned by the residents of the area and will afford a limited amount of space for transient parking during the day."

(j) The garage rates to be charged to be approved by the city, but lessee may charge " after operating expenses a return " of 6% annually " on the original investment [very broadly defined] to cover interest, yield, depreciation, obsolescence and amortization "; and

(k) the lessee shall pave, landscape, and construct a mall and improve East 65th Street and relocate the facilities therein, all of which shall be deemed part of the " investment ".

Plaintiff contends that the contract is illegal because (1) the use contemplated is not public but private; (2) it is not authorized by the statute (General Municipal Law, § 72-j, subd. 3) since that statute relates to " *parking* garages or *parking* spaces " (italics supplied), and the contract here contemplates primarily a *storage* garage; (3) even if authorized and found in some respects to be public in nature, it is so subordinated to the private benefit of the Company that the end result is a private use; (4) the contemplated use would violate the zoning resolution of the city, and its *contractual* obligation to rezone is illegal; (5) the contract specifications are such as to discourage competitive bidding and will insure that the only bidder at the sale will be the Company, particularly since it alone will receive many very valuable benefits therefrom, thereby depriving the city of the opportunity to obtain the highest marketable rental as required by the statute and the New York City Charter, and (6) the provision for a fifty-year lease is in violation of subdivision b of section 384 of the charter.

It is well settled that whether or not a proposed condemnation is for a public purpose is a judicial question (*Matter of Deansville Cemetery Assn.*, 66 N. Y. 569; *Matter of Niagara Falls & Whirlpool Ry. Co.*, 108 N. Y. 375; *Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249); but legislative findings in this respect are entitled to great weight (*Matter of Murray* v. *La Guardia*, 291 N. Y. 320; *Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333). Judicial examination is less

critical, however, where the State itself is to be vested with the property (*Matter of Long Sault Development Co.* v. *Kennedy*, 158 App. Div. 398, affd. 212 N. Y. 1, writ of error dismissed 242 U. S. 272). It is equally well settled that proceedings in eminent domain to acquire property for *street* or *park* purposes are constitutionally permissible as serving a public purpose. (*Matter of City of New York* [*Clinton Ave.*], 57 App. Div. 166, 171, affd. 167 N. Y. 624; *Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234, 239, 240; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 247–248, affd. *sub nom. Adirondack Ry. Co.* v. *New York*, 176 U. S. 335.) Nor do we question the legality of the concept that private property may be condemned for parking motor vehicles when the public is primarily served in the taking of such vehicles from our streets to relieve traffic congestion. But whether or not the use here contemplated, and the method in which it is exercised, is authorized, is another question.

We are here and now solely concerned with the legal sufficiency of plaintiff's complaint. Giving the pleader the benefit of every favorable inference, and assuming the truth of the allegations of its complaint, as we must (*Blanshard* v. *City of New York*, 262 N. Y. 5, 12; *Abrams* v. *Allen*, 297 N. Y. 52) notwithstanding the fact that its proof may well fall far short of establishing them as facts, we cannot say as a matter of pleading that no cause of action whatsoever is set forth, and that no triable issues are presented.

Without setting out the detailed allegations of plaintiff's complaint, sufficient facts are alleged purporting to show that the public use here may be only incidental and in large measure subordinate to the private benefit to be conferred on the Company, and not for the purposes authorized by the statute. Of course an incidental private benefit, such as a reasonable proportion of commercial space, is not enough to invalidate a project which has for its primary object a public purpose (*Matter of Murray* v. *La Guardia, supra; Matter of New York City Housing Authority* v. *Muller, supra; Bush Term. Co.* v. *City of New York*, 282 N. Y. 306; *Matter of Mayor, Aldermen & Commonalty of City of N. Y.*, 135 N. Y. 253), but the use is not public where the public benefit is only incidental to the private (*Matter of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y. 42). Moreover, the validity of a statute upon one set of

facts is immaterial if in its application to another situation it results in invalidity (*Nashville, C. & St. L. Ry.* v. *Walters,* 294 U. S. 405, 414, 415; *Municipal Gas Co.* v. *Public Service Comm.,* 225 N. Y. 89, 95, 96).

Among other things, plaintiff alleges in effect that after the Company — the only probable lessee — has provided storage space for all of its tenants, and made provision for the 308 now existing car spaces in the area to be condemned, the net result will be that only 17 additional spaces will be available for the general public. Plaintiff also alleges with some particularity that many of the specifications are of such character as to benefit the Company privately and exclusively, and neither the public nor other bidders would or could derive any substantial benefit therefrom, such, e.g., as the low height limitation (notwithstanding expensive subcellar construction) which does not help materially to relieve parking congestion but grants a valuable easement of light and air for at least fifty years for the benefit of the Company's apartment house across the street, renting for $60 to $75 per room; the landscaping of the roof for an elevated public park on the southerly half, and a strictly private park on the northerly half, for its tenants to view, rather than employing same for parking purposes claimed by appellants to be necessary; the construction of the center mall, necessitating the widening of one block of East 65th Street, only to create a bottleneck at each end, and the location of entrances and exits across the street from the entrance to the Company's apartment house; the onerous financial arrangements, included in an ultimate probable outlay of $4,000,000, without right to mortgage; all of which, taken together, with other allegations of the complaint, plaintiff asserts, amount not only to a taking primarily for a private rather than a public use, but also result in discouraging competitive bidding and in unduly discriminating in favor of the Company, thus assuring it of continued high rentals from its apartments.

In the face of the averments in the complaint before us, it cannot be summarily determined as a matter of law that no cause of action is stated, and that plaintiff, a taxpayer and owner of a substantial portion of the property sought to be condemned, must yield its property to the governmental power of eminent domain without at least a trial of the issues raised

by it. As we said in *Weiskopf* v. *City of Saratoga Springs* (269 N. Y. 634, 635), " This is not a case to be decided on the pleadings. The constitutionality of the regulations must be decided after the facts are determined on the trial."

Inasmuch as this is the only question now before us, we do not pass on any other question discussed in the briefs, such as the city's right to " contract " in advance for rezoning, and its powers to lease for more than ten years (New York City Charter [1938], § 384, subd. b). Accordingly, the question certified should be answered in the negative, and the order of the Appellate Division should be affirmed, with costs.

DESMOND, J. (dissenting). I dissent and vote to reverse the order, with costs, answer the certified question in the affirmative and dismiss the complaint. Nothing could be accomplished by a trial of any of plaintiff's allegations, since none of them exhibit any justiciable issue. We all agree that the Legislature has settled the question of whether condemnation of land for a public parking garage, to be built by the city but leased to a private operator, is for a public purpose (General Municipal Law, § 72-j). The public nature of such a use would not be destroyed by a demonstration, on a trial of this action, that this proposed garage will largely benefit, and is principally desired by, the owner of the apartment house across the street or its tenants, or that all concerned expect that this lease will be bought at auction by that particular owner, or that the terms of the lease are such as to make it probable that the owner across the street will be the successful bidder therefor, or that the project may accomplish only a little alleviation of traffic conditions, or that, in the end, the apartment house tenants across the street, rather than the general public, will have principal use of the garage. All those are, on their face, arguments not against the legality, but as to the feasibility, or wisdom, or fairness, of the expenditure. Such arguments, when rejected by the appropriate legislative body, cannot be re-examined by the courts (*Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700, 705, 706, 707; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333, 342; *Matter of Murray* v. *La Guardia,* 291 N. Y. 320, 329, 330; *Weitzner* v. *Stichman,* 271 App. Div. 255, affd. 296 N. Y. 907).

LOUGHRAN, Ch. J., LEWIS and FULD, JJ., concur with FROESSEL, J.; DESMOND, J., dissents in opinion in which CONWAY and DYE, JJ., concur.

Order affirmed, etc.