LESTER PACE et al., Respondents, v PERCY PERK et al., Appellants.

Second Department, July 6, 1981

446

APPEARANCES OF COUNSEL

*Frederick M. Douglass* for appellants.

*Robin & Alexander (Harry Alexander* of counsel), for respondents.

### OPINION OF THE COURT

DAMIANI, J. P.

The issues in this case are whether plaintiffs' complaint states a cause of action against any or all of the defendants and, if so, whether relief is barred to plaintiffs against any or all of those defendants by reason of the applicability of the affirmative defenses of the Statute of Frauds, *res judicata*, or collateral estoppel.

In substance, the complaint alleges that in August, 1973 plaintiffs Lester and Isabel Pace and defendant Percy Perk agreed to purchase improved real property known as the ICU Hotel located on Fulton Street in Kings County. The purchase price was $50,000, payable $10,000 in cash at the closing and the remainder by giving a purchase money mortgage for $40,000 bearing $8\frac{1}{2}\%$ interest per annum for a term of 5 years. An additional $15,000 was required to put the premises in good repair. The parties agreed to form a partnership for the purpose of purchasing the prem-

ises and operating it as a hotel. Defendant Perk was to contribute $15,000 and plaintiffs agreed to contribute $10,000, to provide labor in making repairs, and to manage the hotel when it opened. Plaintiffs and Perk agreed to treat their respective investments as equal and to share equally in the profits or losses.

Before the closing, defendant Perk advised plaintiffs that he wished to take title in the name of plaintiffs and his nominee Vurlia Wilkins. Wilkins paid no consideration and was not a member of the partnership. On September 24, 1973 plaintiffs and Wilkins took title to the premises.

On or about January 15, 1974 defendant Perk requested that plaintiffs and Wilkins execute a $15,000 second mortgage to secure his investment. Perk requested that the named mortgagee be Edward Hall. Hall paid no consideration for execution of the bond and mortgage. The plaintiffs Pace and defendant Wilkins executed the mortgage in favor of Hall for $15,000 for 5 years at 8½% interest payable $307.95 per month. In contradiction of its terms, plaintiffs orally agreed with defendant Perk that because they were partners, no payments need be made on the mortgage.

After the closing, the plaintiffs improved the premises and operated it as a hotel. They distributed the income equally between themselves and defendant Perk.

On or about January 1, 1975 defendant Perk demanded that plaintiffs buy out his interest for a substantial sum and threatened that unless they did so he would take over complete title to the premises. Apparently plaintiffs refused. On or about January 23, 1975 defendant Perk had Hall, the mortgagee, institute a foreclosure action.

It appears from the record that on August 8, 1975 the court in the foreclosure action granted Hall summary judgment striking the answer of the Paces and Wilkins. A sale was held on September 9, 1975 and the property was purchased by Hall who assigned his bid to Hall & Wilkins, Inc., a domestic corporation. On September 10, 1975 the Referee executed a deed in favor of that corporation. On or about March 19, 1976 the Paces moved to set aside the judgment of foreclosure and sale. The motion to vacate the judgment

of foreclosure was denied on April 12, 1976. Plaintiffs Pace did not appeal, but instead commenced this action.

The "WHEREFORE" clause in plaintiffs' complaint in this action demands, *inter alia*, that any conveyances made by defendants to any fictitious corporation formed by them be annulled, that defendants be directed to provide an accounting of the partnership affairs, that a trust be declared in favor of plaintiffs to the extent of their interest in the property and that they be granted a money judgment for the amount found to be due them on the partnership account.

Issue was joined against defendant Perk on May 7, 1977. His answer denies the material allegations of the complaint and sets forth the Statute of Frauds as an affirmative defense. Issue was joined with defendant Wilkins on July 1, 1977. His answer denies the material allegations of the complaint and sets forth as an affirmative defense the alleged failure of the complaint to state a cause of action. Issue was joined with defendant Hall on August 10, 1976. His answer also denies the material allegations of the complaint and sets forth as affirmative defenses the claims that plaintiffs lacked personal jurisdiction over Hall and that the complaint failed to state a cause of action.

Plaintiffs moved to strike the answers of the defendants for failure to appear for an examination before trial. Defendants cross-moved to dismiss the complaint (1) for failure to state a cause of action, (2) on the ground of *res judicata*, and (3) on the ground of abandonment. The motion in chief was granted to the extent of directing defendants to appear for examination on a date certain and plaintiffs have not appealed. With respect to the cross motion, Mr. Justice HIRSCH found that the complaint sounded in fraud and deceit and therefore stated a cause of action. He rejected the *res judicata* claim because (a) defendant Perk was not a party to the foreclosure action and (b) the instant action for fraud is different in nature and object from one in contract, citing *Lipkind v Ward* (256 App Div 74). Finally he found no intent on the part of the plaintiffs to abandon the action. Accordingly, the defendants' cross motion to dismiss was denied. The defendants have appealed.

FAILURE TO STATE A CAUSE OF ACTION

At the outset we note that the procedure adopted by defendants was somewhat confusing since their notice of cross motion and supporting papers, submitted after joinder of issue, requested dismissal of plaintiffs' complaint but did not specify the section of the CPLR under which the motion was made. Motions to dismiss a complaint are governed by CPLR 3211 and generally must be made before service of a responsive pleading is required. However, a motion to dismiss upon the ground that one or more causes of action asserted in the complaint fail to state a cause of action is an exception to the general rule and may be made at any time (CPLR 3211, subd [e]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C 3211:28, p 33).

█ A reading of defendants' moving papers indicates that by the branch of their cross motion addressed to the alleged failure of the complaint to state a cause of action, they did not seek anything more than to test its legal sufficiency. Upon such a motion to dismiss a complaint for legal insufficiency, the court must assume that its allegations are true *(Denihan Enterprises v O'Dwyer*, 302 NY 451, 458), and must deem the complaint to allege whatever can be imputed from its statements by fair and reasonable intendment, however imperfectly, informally or illogically facts may be stated therein *(Condon v Associated Hosp. Serv. of N. Y.*, 287 NY 411). In making its analysis, the court is not bound by the constructions and theories of the parties (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:24, p 30). The test of the sufficiency of a complaint is whether it gives sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and whether the requisite elements of any cause of action known to our law can be discerned from its averments (CPLR 3013; *Foley v D'Agostino*, 21 AD2d 60, 62-65; *Guggenheimer v Ginzburg*, 43 NY2d 268, 274-275). Where the motion to dismiss for failure to state a cause of action is made under CPLR 3211, the plaintiff may rest upon the matter asserted within the four corners of the complaint

and need not make an evidentiary showing by submitting affidavits in support of his complaint *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 635).

Since that branch of defendants' cross motion which was addressed to plaintiffs' complaint was confined only to the issue of legal sufficiency we deem it to have been made under CPLR 3211 (subd [a], par 7). It does not appear that Special Term chose to consider that branch of the motion as one for summary judgment under CPLR 3211 (subd [c]) and/or CPLR 3212 and hence we have confined ourselves to the allegations of the plaintiffs' complaint itself and would have considered the affidavits submitted on the cross motion and plaintiffs' verified bill of particulars, only if necessary, for the limited purpose of remedying any defects in the complaint (see *Rovello v Orofino Realty Co.,* 40 NY2d 633, 636, *supra).*

The complaint alleges in paragraph 7 that plaintiffs and defendant Perk *formed a partnership* for the purchase and operation of the hotel. Because Perk did not want his name connected with the transaction he used Vurlia Wilkins as his dummy to take title and Edward Hall as his dummy to take a mortgage on the premises from plaintiffs and Wilkins. Neither Wilkins nor Hall paid any consideration for their interests in the premises. Plaintiffs are alleged to have agreed with defendant Perk that, despite its terms, no payments were to be made under the mortgage since they were partners. After the hotel had been repaired and the profits had been equally divided for some time, defendant Perk came to plaintiffs and demanded that they purchase his interest for a substantial sum and threatened that if they refused he would take over the place and give them nothing. When they refused Perk had Hall foreclose on the mortgage. Hall bought at the sale and assigned his bid to a corporation named Hall & Wilkins, Inc., which thereafter took title, and achieved Perk's goal of ousting plaintiffs.

There is really nothing very new under the sun. A quite similar drama has been played out before. In *Dalury v Rezinas* (183 App Div 456, affd 229 NY 513) the defendant Rezinas operated a hotel and café at Coney Island. The hotel was built upon land leased to Rezinas and he, in turn, leased

a section of the land to others for a sum exceeding the ground rent, leaving the hotel rent free. He owed money to the plaintiff Dalury and they formed a partnership to operate the hotel, Dalury releasing Rezinas from obligations to himself, assuming other obligations and contributing cash, while Rezinas contributed the hotel business and the lease of the premises. After some months the parties had a "falling out" and Dalury withdrew from the business for fear of violence from Rezinas. Negotiations for a settlement eventually fell through and Dalury commenced an action for dissolution of the partnership and an accounting. A receiver of the partnership assets was appointed and thereafter the owner of the land brought summary proceedings for nonpayment of the ground rent, which was admittedly in arrears. Neither Rezinas nor Dalury offered to pay the outstanding rent and therefore a dispossess was issued. The landlord leased the premises to Crickellas and Booras, who bought the partnership assets consisting of the hotel fixtures, furnishings and stock in trade from the receiver of the partnership for a fraction of their value. Dalury withdrew his objections to the receiver's account and the partnership affairs were thus finally settled (in this respect *Dalury v Rezinas, supra,* differs from the instant case, since here there has been no accounting.)

After some months, Dalury sued Rezinas, the attorney for Rezinas, the receiver of the partnership assets, the landlord and the new operators of the hotel, Crickellas and Booras, upon the ground of fraud. He alleged that settlement negotiations had fallen through because the attorney for Rezinas had concocted a scheme to cheat Dalury out of his interest in the premises. The essence of the scheme was that the landlord, a participant in the plot, would bring summary proceedings, obtain a dispossess and then relet the premises to Crickellas and Booras who were dummies for Rezinas. Similarly the receiver, also a participant, agreed to sell the assets to the new lessees for less than their value. Once the lease was broken, the landlord was to be paid the arrears in rent. The scheme was carried out as planned and Rezinas continued in the business as before through his surrogates, with the exception that Dalury was ousted and

lost his partnership interest in the hotel, ground lease and other assets.

The Appellate Division, First Department, held that Dalury could not sue Rezinas and the others for conspiracy to defraud because the scheme was accomplished through lawful legal proceedings and the law provides that "no action lies where a person has been damaged by another through the doing of a lawful act or in the enforcement of a legal remedy" *(Dalury v Rezinas,* 183 App Div 456, 459, affd 229 NY 513, *supra).* The court further held that the action did not lie because one partner could not sue another at law to recover damages for conversion or fraud committed during the life of the partnership and his only remedy was to hold the other liable for his acts in an accounting proceeding. The court stated in relevant part (pp 460-461):

"This action is not to recover an amount that the partner has been induced to put into the business in reliance upon fraudulent representation, but is to recover his interest in what remains after the capital has been employed in and subjected to the risks of the business and at most all he would be entitled to recover is the balance that would be found due upon an accounting in the action for dissolution. It is not alleged that such action had terminated nor that any balance had been struck and any amount found due. The partnership had not terminated and the action would be *ex delicto* for a conversion of the partnership assets. It is well settled that one partner cannot sue the other at law, as distinguished from an action in equity, with respect to partnership transactions, except after a full accounting, and balance struck, and such an action is on contract and not *ex delicto.* If one partner betrays his trust, and converts to his own use partnership property, he incurs the usual liability that one partner incurs to another respecting partnership affairs, *i.e.,* to be held liable in an accounting, but he cannot be sued by the other partner for damages in an action for conversion. *(Belanger* v. *Danna,* 52 Hun 39, 42; *Hollister* v. *Simonson,* 36 App. Div. 63; 170 N.Y. 357; *Covert* v. *Henneberger,* 53 How. Pr. 1; *Cary* v. *Williams,* 8 N. Y. Super. Ct. 667.) The fact that the partner may have

conspired with others with intent to acquire the interest of the copartner, so long as the proceedings were lawful and in the assertion of a legal right, *gives no cause of action at law*. (Contrast opinion in *Weinstein* v. *Welden*, 80 Misc. Rep. 348, with opinion of reversal in 160 App. Div. 554; latter affd., 220 N.Y. 693. See, also, *Neudecker* v. *Kohlberg*, 81 N.Y. 296, 299.) As the plaintiff could not recover judgment against Rezinas in this action, he has no cause of action herein against any of the defendants * * *

"If the plaintiff has been injured it is not necessary to reverse the settled law of this State and give him relief in this action. The courts have been open to him and he could have secured his rights by appropriate action on his part. *The action for a dissolution of the copartnership brought by him as plaintiff was pending. Rezinas could have been called to account in that action for any breach of duty to his copartner that had deprived him of his interest in the copartnership in assets.*" (Emphasis added.)

■ The lessons to be drawn from the case of *Dalury v Rezinas (supra)* are these: an action at law will not lie against a wrongdoing partner or his agents or coconspirators for otherwise lawful acts, such as the commencement of a foreclosure action, committed with an intent to harm plaintiff during the life of the partnership *(Sasson v Lichtman*, 276 App Div 932, 933; *Bassett v American Meter Co.*, 20 AD2d 956, 957; Ann., 21 ALR 21, 125-127; Ann., 168 ALR 1088, 1117), however, the partner can be compelled to account in equity.

Partners are accountable as fiduciaries (Partnership Law, § 43; Uniform Partnership Act [6 Uniform Laws Ann (master ed)], § 21, subd [1]). They owe a duty of exercising the utmost good faith, fairness and loyalty to their copartners *(Matter of Lester*, 87 Misc 2d 717, 721-722). Subdivision 1 of section 43 of the Partnership Law states: "1. Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

If Perk wished to terminate the partnership and to that end offered to sell his interest therein to the plaintiffs, his remedy upon their rejection of his price term was to sue for dissolution, not to cheat plaintiffs of their interest with the aid of his nominees Wilkins and Hall. In charging that he did so, it is our opinion that plaintiffs' complaint states a good cause of action for an accounting against defendant Perk arising out of the breach of his fiduciary duties as a partner.

Wilkins claims that the complaint fails to state a cause of action against him because he was nothing more than the donee of Perk's interest in the land, citing *Bucklin v Bucklin* (1 Abb Ct App 242, 1 Keyes 141) for the proposition that an executed gift of real property is valid as though based upon a pecuniary consideration. Wilkins may claim that the deed naming him as an owner constituted a gift to him of Perk's interest in the property, but that is not at all what the complaint alleges and it is the allegations of the complaint, taken as true, which are controlling *(Denihan Enterprises v O'Dwyer*, 302 NY 451, 458, *supra)*. The complaint claims that Wilkins and Hall were, and still are, dummies for Perk. Thus it appears that the complaint basically is charging Wilkins and Hall with knowingly assisting Perk in violating his fiduciary duties to plaintiffs. So construed, the complaint states a cause of action against both Wilkins and Hall. Professor Scott stated in his treatise on the law of trusts:

"§ 506. Liabilities of third persons. Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary. If the third person makes a profit through such participation, he is chargeable as constructive trustee of the profit so made.

"Where a fiduciary wrongfully transfers to a third person property which he holds as fiduciary, the third person is chargeable as constructive trustee of the property unless he is a bona fide purchaser. He is chargeable as constructive trustee if he received the property with notice of the transferor's breach of duty or if he gave no value even

though he had no notice" (5 Scott, Trusts [3d ed], pp 3568-3569.)

New York law is in accord with this proposition. "Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust" *(Wechsler v Bowman*, 285 NY 284, 291, mot to amd remittitur granted 286 NY 582; *Newburger, Loeb & Co. v Gross*, 563 F2d 1057, 1074 [CCA 2d, interpreting New York law], cert den 434 US 1035; *Cornale v Stewart Stamping Corp.*, 129 NYS2d 808, 814).

Although Special Term interpreted the complaint as alleging a cause of action in fraud and although plaintiffs now claim on appeal that their complaint sounds in fraud, we interpret it differently because under the rule of *Dalury v Rezinas* (183 App Div 456, affd 229 NY 513, *supra)* we would be obliged to dismiss such an action at law. Rather, it appears that the original draftsman of the complaint sought to charge Perk with a breach of his fiduciary duty as a partner and to charge Wilkins and Hall with knowingly participating in that breach of duty. This is manifested by the fact that the "WHEREFORE" clause of the complaint seeks, *inter alia*, (1) an accounting by all defendants, (2) the imposition of a trust upon the hotel property and all moneys received therefrom, and (3) the award to plaintiffs of a judgment against the defendants for such sum as may be found to be due them upon the final accounting. Accordingly, we hold that while inartistically drawn, plaintiffs' complaint states a cause of action against all the named defendants.

### STATUTE OF FRAUDS

Plaintiffs' complaint rests upon the allegation that they and defendant Perk agreed to form a partnership for the purchase and operation of the hotel. In their bill of particulars, plaintiffs admit that this contract was oral and that "[t]here was no written agreement concerning the transaction between the plaintiffs and defendant, Percy Perk". It is claimed that because plaintiffs' action is based upon this oral contract it is barred by the Statute of Frauds.

The CPLR provides that at any time before the service of a responsive pleading is required, a party may

move for judgment dismissing one or more causes of action asserted against him on the ground that the cause of action may not be maintained because of the Statute of Frauds (CPLR 3211, subd [a], par 5). CPLR 3211 (subd [e]) unequivocally provides, in relevant part, that "[a]ny objection or defense based upon a ground set forth in paragraph * * * five * * * of subdivision (a) is waived unless raised either by such motion [to dismiss] or in the responsive pleading". Defendant Perk apparently did not timely move to dismiss pursuant to CPLR 3211, upon the ground of the Statute of Frauds, but he did assert that affirmative defense in his answer (CPLR 3018, subd [b]). Perk therefore properly asserted the defense of the Statute of Frauds and it could form the basis of a motion for summary judgment under CPLR 3212 upon a ground stated in CPLR 3211 (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3212:20, p 439).

CPLR 2214 (subd [a]) requires that a notice of motion state the grounds upon which the requested relief is demanded. Defendants' notice of cross motion, made after joinder of issue, did not expressly seek judgment dismissing plaintiffs' complaint upon the ground of the Statute of Frauds. However, the affirmation of defendants' counsel, submitted in support of their cross motion, argued that the complaint should be dismissed as to defendant Perk on that ground. Apparently because of defendants' failure to comply with the simple requirement of CPLR 2214 (subd [a]) that all the grounds upon which the requested relief is demanded be denoted in the notice of motion, the decision of Special Term did not deal with the Statute of Frauds issue. Since the accompanying papers manifested the reliance of defendant Perk upon the Statute of Frauds as a ground for dismissal, Special Term could have exercised its discretion to treat the omission of that ground from the notice of cross motion as a harmless irregularity, and decided the issue (CPLR 2001; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C 2214:3, p 69; 2A Weinstein-Korn-Miller, NY Civ Prac, par 2214.01, n 2). It did not do so. We address the issue on appeal only because it was tangentially raised at Special

Term, it has now been briefed by defendant Perk and the plaintiffs, and the interests of expediency and judicial economy justify its consideration at this juncture.[1]

██ Perk first claims that the oral agreement in question is violative of section 5-701 (subd a, par 1) of the General Obligations Law which provides in relevant part that in order to be enforceable, contracts which by their terms are not to be performed within one year from the making thereof must be in writing and signed by the party to be charged. This section of the Statute of Frauds only requires a writing where the contract does not admit of performance within one year from the time of the making thereof (56 NY Jur, Statute of Frauds, § 15). Where a parol agreement is, by its express terms, for a period exceeding one year it is unenforceable, but where performance is possible, however unlikely or improbable that may be, within one year, the agreement does not come within the proscription of the statute (56 NY Jur, Statute of Frauds, §§ 18-19). Where parties agree to form a partnership and make no provision for the duration of that relationship between them, a partnership at will is created *(Malmeth v Schneider*, 18 AD2d 1030; Partnership Law, § 62, subd 1, par [b]; 43 NY Jur, Partnership, § 19), and because it is possible to dissolve a partnership at will within one year, an agreement which is silent as to the duration of the partnership does not violate the Statute of Frauds (72 Am Jur 2d, Statute of Frauds, § 31). Furthermore, in the leading case of *Wahl v Barnum* (116 NY 87, 97) it was held that where the oral contract of partnership expressly contemplates the continuance of the relationship beyond the period of a year, the only effect of the section of the Statute of Frauds in question is to convert the agreement into a partnership at will and it does not bar an action by one partner against another to obtain a dissolution

1. We note that because defendants Wilkins and Hall failed either to move to dismiss under CPLR 3211 (subd [a], par 5) upon the ground of the Statute of Frauds, or to assert that defense in their respective answers, they waived it (see *Raoul v Olde Vil. Hall,* 76 AD2d 319, 333). If it should be established that the oral agreement between plaintiffs and defendant Perk falls within the Statute of Frauds (and as discussed *infra* it is far from clear that it does), then on the present state of the pleadings plaintiffs may nevertheless prove such oral contract against Wilkins and Hall.

and an accounting (see, also, *Boxill v Boxill*, 201 Misc 386, 390; *McCall v Frampton*, 99 Misc 2d 159, 170, mod on other grounds 81 AD2d 607).

Defendant Perk also claims that the alleged agreement is unenforceable under subdivision 1 of section 5-703 of the General Obligations Law which provides, in relevant part, that an estate or interest in real property cannot be created except by an instrument, in writing, signed by the party to be charged (see General Obligations Law, § 5-701, subd a, par 1). It is the general rule that the disposition of real property to two or more persons who are not husband and wife, creates in them a tenancy in common, unless expressly declared to be a joint tenancy (EPTL 6-2.2, subd [a]). The Statute of Frauds requires written evidence of an agreement which contemplates acquisition of land by the parties as tenants in common (see *Walsh v Henning*, 31 Misc 2d 871, affd 16 AD2d 707; 56 NY Jur, Statute of Frauds, § 139). Although in the absence of an agreement to the contrary partners share equally in the ownership of partnership assets (Partnership Law, § 51), and to that extent their interest is similar to a tenancy in common, a partnership holds title to land as though it was personalty (Partnership Law, § 52; Ann., 80 ALR2d 1107), and for that reason it has been held that the Statute of Frauds does not apply to the purchase of real property by a partnership *(Mattikow v Sudarsky*, 248 NY 404, 406-407).

The crucial factor in deciding whether the Statute of Frauds is applicable here is the intent of the parties. If they intended to purchase the land as tenants in common and to operate the hotel as partners, the Statute of Frauds would apply to prevent proof of their agreement concerning their respective interests in the land. If, however, they intended that the real property be a partnership asset, the case does not fall within the Statute of Frauds. Mere community of interest in land does not of itself establish a partnership (Partnership Law, § 11, subd 2; *Weisner v Benenson*, 275 App Div 324, 331-332, affd 300 NY 669; *Sage v Sherman*, 2 NY 417, 427; *Porter v McClure*, 15 Wend 187, 192; Ann., 150 ALR 1003, 1032). There must

be a further agreement, evidenced either by words or the course of dealing between the parties that it was their intention to form a partnership to acquire title to the property (see *McPhillips v Fitzgerald*, 76 App Div 15, 21-22, affd 177 NY 543; *Weisner v Benenson*, 275 App Div 324, affd 300 NY 669, *supra*). Resolution of the issues of fact surrounding the intent of the parties, and thus the applicability of the real property Statute of Frauds, must await determination at the trial (see *Walsh v Henning*, 31 Misc 2d 871, 873 [opn of Mr. Justice JAMES D. HOPKINS, then sitting in Supreme Ct, Westchester County], affd 16 AD2d 707, *supra*).

### RES JUDICATA

Defendant Hall contends that plaintiffs' action is barred by the defense of *res judicata*. Hall argues that the allegations of plaintiffs' present complaint were asserted by them as a defense to Hall's foreclosure action. It appears that in the foreclosure action, Lester and Isabel Pace served an answer in which they alleged that Hall was not "the true plaintiff in this action", that Perk was the "true owner" of the mortgage, that Wilkins was not a "true owner" of the property, that both Hall and Wilkins were the nominees of Perk, and that "this action is unfounded". Hall moved for summary judgment striking the answer containing this defense and the Paces defaulted in opposing the motion. Their answer was therefore stricken and judgment by default was rendered in favor of Hall. After the sale, the Paces moved to vacate the default judgment and supported their motion by a lengthy affidavit from Lester Pace which essentially recounted the factual allegations of the present complaint, concluded that Perk, Wilkins and Hall conspired to defraud the Paces, and asserted that the Paces had defaulted in opposing the motion for summary judgment because of some inexplicable failure of their attorney to act. The motion to open the default was denied without opinion. The Paces then commenced this action based upon the same factual allegations as those contained in Lester Pace's affidavit in support of the motion to vacate the default foreclosure judgment but without allegations of fraud.

■ Where a defendant may interpose a claim as a counterclaim but fails to do so, the doctrine of *res judicata* in the sense of claim preclusion[2] does not apply to prevent him from subsequently maintaining an action on that claim (Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 56.1, par [1], pp 65-66). In New York all counterclaims are permissive (CPLR 3019, subd [a]) and since the Paces asserted the subject matter of their present claim only as a defense and not a counterclaim in the foreclosure action, the doctrine of *res judicata* in the sense of claim preclusion does not foreclose the maintenance of the instant suit (see Failure to Assert Matter as a Counterclaim as Precluding Assertion Thereof in Subsequent Action, Ann., 22 ALR2d 621, 637; cf. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3019:2, p 216).

Inquiry must turn to the question of the applicability of the doctrine of *res judicata* in the sense of issue preclusion (also called direct or collateral estoppel; see *Gramatan Home Investors Corp. v Lopez*, 46 NY2d 481, 485, where it was observed that collateral estoppel is but a component of the broader doctrine of *res judicata*).

■ Where the same facts constitute a ground of defense to the plaintiff's claim and also a ground for a counterclaim, the defendant alleges those facts as a defense but not as a counterclaim, and judgment is given for the plaintiff, the rules of issue preclusion apply (Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 56.1, Comment *c*, pp 67-68). The salient New York case on the subject of issue preclusion is *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 71), in which the Court of Appeals held that there are but two necessary requirements for the invocation of the doctrine of collateral estoppel, namely, (1) an identity of issue which has necessarily been decided in the prior action and is decisive in the present action and (2) there must have been a full and fair opportunity to contest the decision

2. In *Matter of Reilly v Reid* (45 NY2d 24, 27) the Court of Appeals observed that the doctrine of *res judicata* embraces many concepts. Because of the indiscriminate use of terminology, the differences between those concepts have often been confused and accordingly the following discussion will utilize terms as defined in *Brown v Lockwood* (76 AD2d 721).

now said to be controlling. Thus, where a defense has been asserted, litigated and overruled in one action, the party who asserted it is collaterally estopped from relitigating the decided factual or legal issues by bringing an independent action on that claim (see *Patrick v Shaffer*, 94 NY 423, 429-430).

 The judgment in the foreclosure action was entered upon default. The restatement and some commentators take the position that default judgments should not give rise to issue preclusion (Restatement, Judgments 2d [Tent Draft No. 4], § 68, Comment *e*, p 9; Note: Collateral Estoppel in Default Judgments: The Case for Abolition, 70 Col L Rev 522; Rosenberg, Collateral Estoppel in New York, 44 St. John's L Rev 165, 173-177). The New York cases are, however, to the contrary *(Gates v Preston*, 41 NY 113; *Blair v Bartlett*, 75 NY 150; and New York cases cited in Default Judgment—Res Judicata, Ann., 77 ALR2d 1410, 1421-1422, and Ann, 128 ALR 472, 475-476). In *Barber v Kendall* (158 NY 401, 405) the Court of Appeals stated that the plaintiff in the second action was "bound not only by what was actually decided, but by anything else embraced within the issues *and which could have been decided*". (Emphasis added.) This court followed that rule in the case of *Mitchell v Insurance Co. of North Amer.* (40 AD2d 873, 874), stating that "the effectiveness of a judgment may not be impeached in another lawsuit * * * and a prior default judgment bars a subsequent suit on issues which were or could have been determined in the earlier action *(Goebel* v. *Iffla*, 111 N. Y. 170; *Goldfarb* v. *Cranin*, 35 Misc 2d 126)." It must therefore be concluded that since the Paces presented the subject matter of the instant suit as a defense to Hall's foreclosure action, they could have fully litigated it in the prior action. The fact that they defaulted and did not actually litigate the factual issues is no impediment to application of the doctrine of issue preclusion.

 The defenses of *res judicata* and collateral estoppel are enumerated in CPLR 3211 (subd [a], par 5) the so-called "grab bag of dismissal objections" (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:21, p 27). As has been stated, *supra*, in discussing the issue of the Statute of Frauds, a defense

set forth in that paragraph must be raised either by a motion to dismiss made before service of a responsive pleading is required or by the defendant's answer. Since the defendants in this case did not timely move to dismiss plaintiffs' complaint under CPLR 3211 (subd [a], par 5) and did not assert the defenses of *res judicata* or collateral estoppel in their respective answers, those defenses were waived (CPLR 3211, subd [e]).

The cross motion of the defendants, made after joinder of issue, raised the defenses of *res judicata* and collateral estoppel only on behalf of defendant Hall.[3] Hall's waiver of those defenses could be retracted only by amendment of his answer to include them (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:57, p 61; C3211:62, p 66). Since Hall's time to amend his answer as of course had expired (CPLR 3025, subd [a]), such amendment requires leave of court pursuant to CPLR 3025 (subd [b]) which provides: "(b) Amendments and supplemental pleadings by leave. A party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances."

Defendant Hall has never expressly requested leave to amend his answer and were we to deem his motion papers to implicitly include such a request, we would deny leave.

Because of the direction in CPLR 3025 (subd [b]) that leave to amend a pleading be freely given, such amendments

---

3. It was once the rule that collateral estoppel could only be invoked where all the parties to the proceeding in which the judgment is relied upon were bound by the prior judgment. This was known as the rule of mutuality (Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment, Ann., 31 ALR3d 1044, § 1, subd [d], p 1048). Since defendant Wilkins was a party to the foreclosure action he could have asserted the judgment in that action as a bar to plaintiffs' claims in this action. In *B.R. DeWitt, Inc. v Hall* (19 NY2d 141, 147), the Court of Appeals announced that the rule of mutuality of estoppel is now a "dead letter" and "inoperative". Thus a stranger may plead as a defense the fact that the plaintiff's present factual allegations have been heard in another suit and determined against him (see *Israel v Dolson Co.*, 1 NY2d 116; Rosenberg, Collateral

are usually granted unless the plaintiff can show prejudice (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3025:6, p 477; Siegel, New York Practice, § 237). Here the default giving rise to the collateral estoppel defense occurred on July 9, 1975. The motion of the Paces to open that default was denied on April 12, 1976. This action was commenced against Hall in July, 1976 and his answer was served on August 10, 1976. Hall's *res judicata* and collateral estoppel claim was first made on June 28, 1979 in the cross motion of the defendants to dismiss the complaint.

It thus appears that all the facts upon which the defenses of *res judicata* and collateral estoppel are based were known to defendant Hall before plaintiffs commenced this action and could easily have been pleaded by him earlier. Under such circumstances the courts are hesitant to allow amendment (see *Foster Co. v Terry Contr.*, 25 AD2d 721; *Burton v Green*, 70 AD2d 791). More importantly however, had defendant Hall timely asserted the defenses of *res judicata* and collateral estoppel in his answer, plaintiffs would have been alerted to the existence of those defenses in time to commence an action for malpractice against the attorney who failed to answer Hall's motion to strike their answer in the foreclosure action. The Statute of Limitations ran against the malpractice claim in July, 1978 (CPLR 214, subd 6), one year before Hall first sought to interpose the defenses. In light of such prejudice to plaintiffs, leave to amend must be denied (see *Ciccone v Glenwood Holding Corp.*, 44 Misc 2d 273; cf. *Perez v Chutick & Sudakoff*, 50 FRD 1).

Accordingly, it is our view that plaintiffs' complaint states a cause of action against all defendants and that the defenses of *res judicata* and collateral estoppel have been waived. The order of Special Term should be modified to provide only that the branch of the cross motion which is

---

Estoppel in New York, 44 St. John's L Rev 165, § IV, subd B, pp 186-193). Apparently defendant Perk was not a party to the foreclosure action, but he has not attempted to defensively invoke the doctrine of collateral estoppel against the plaintiffs, who defaulted in that suit. We do not now rule on the question of whether a stranger to a default judgment may invoke it as the basis for claim preclusion.

by defendant Perk for summary judgment dismissing plaintiffs' complaint upon the ground of the Statute of Frauds is denied without prejudice to determination of that issue at trial, and as so modified, should be affirmed insofar as appealed from.

GULOTTA, COHALAN and O'CONNOR, JJ., concur.

Resettled order of the Supreme Court, Kings County, dated March 28, 1980, modified by adding to the last paragraph thereof, after the words "defendants' [cross] motion is denied" the following: "except that branch of the cross motion which is by defendant Perk for summary judgment on the ground of the Statute of Frauds is denied without prejudice to determination of that issue at trial". As so modified, resettled order affirmed insofar as appealed from, without costs or disbursements.