IKE ELIAS, Respondent, v NATHAN L. SEROTA, Appellant, et al., Defendants.

Second Department, October 1, 1984

**APPEARANCES OF COUNSEL**

*Shea & Gould* (*Herbert B. Evans, Arthur D. Felsenfeld* and *Willis H. Stephens, Jr.,* of counsel), for appellant.

*Maffucci, Kruman & Zito* (*Frank W. Zito* and *Henry E. Kruman* of counsel), for respondent.

**OPINION OF THE COURT**

LAZER, J. P.

The principal issue in this action for judicial dissolution of two partnerships is the enforceability of an auction sale of partnership properties conducted pursuant to the dissolution provisions of the partnership agreements. The partner who opposes judicial dissolution and seeks dissolution pursuant to the partnership agreements has counterclaimed for specific performance of the auction results but Special Term has dismissed the counterclaims on the

ground that the auction results were not supported by sufficient memoranda to comply with the Statute of Frauds. We conclude the dismissal was error.

I

The sole partners of S & E Realty Company and the sole general partners of Elota Realty Company, a limited partnership, are Ike Elias and Nathan Serota, for whom these entities have been the vehicles for real estate dealings so extensive that the auction involved 23 commercial parcels. Each of the partnerships was regulated by a partnership agreement which provided for division of profits and losses, recognition of capital contribution, management power, continuation of the business upon the death of either of the partners and the method of dissolution. The dissolution paragraphs in each agreement permitted either Elias or Serota to terminate the partnership by giving a written notice of dissolution containing notice of the time and place of an auction sale of the partnership properties. The auction provisions directed that the sale be conducted by a member of the accounting firm serving the partnerships, limited the bidding solely to the partners, made the order in which each partner could bid on each parcel dependent on the toss of a coin, and required each successive bid to exceed the prior one by at least $2,500. The agreements also declared that "whoever of Serota or Elias shall have made the highest bid * * * shall be deemed to have purchased such property". Within 45 days after the auction sale, the purchasing partner of each parcel was to make a 20% down payment to the partnership, with the remainder due in 36 equal monthly installments. The agreements bound the partnerships and the partners, their heirs, administrators and assigns to the results of the completed auction sales.

By letters dated July 29, 1982, Elias elected to terminate both partnerships and fixed September 14 and 15, 1982, as the dates for the auctions. By two signed memoranda dated September 14, 1982, the partners set that date for the auction of all the properties, designated February 1, 1983 as the closing date, modified the partnership agreements by raising the minimum successive bid to $5,000, and provided for a separate tally for the successful bids of each

partner, with the dollar totals to be set off against each other "so that a balance may be struck and a single check be given to the bidder who is entitled to the balance due".[*] To avoid tax consequences and mortgage acceleration clauses, one of the modification memoranda provided that title to each of the properties would be retained by the partnership entities "as nominee for account and exclusive benefit of the successful bidder". It was anticipated that the partnership would enter into more formal nominee agreements with the successful bidders at a later time.

On the day of the auction, the appropriate accountant assumed the role of auctioneer and conducted the auction in the presence of a stenographer who transcribed the proceedings. The next day, the auctioneer signed and mailed the partners a summary of the auction results showing that Elias had successfully bid a total of $11,360,000 for 5 parcels while Serota was the successful bidder on 13 parcels for a total of $36,940,000, and that no bids had been received for 5 parcels. Although the parties agreed that the partnership lawyers would prepare the requisite closing documents, tax and other complications resulted in the retention of separate counsel by Elias, who then refused to execute the closing documents prepared by Serota's counsel on the ground that the documents constituted a material change from the provisions of the partnership agreements.

Elias subsequently commenced this action for judicial dissolution of both partnerships and the appointment of a receiver. Asserting that judicial dissolution would violate the dissolution procedures established by the partnership agreements Serota counterclaimed for specific performance of the auction results plus damages. Elias responded with a motion to dismiss both counterclaims on the ground that the auction sale was unenforceable under the Statute of Frauds because he had never signed any writing memorializing the auction results. Although Elias had not yet replied to the counterclaims, Serota cross-moved for summary judgment on the counterclaims and to dismiss the portion of the complaint that sought appoint-

---

[*] No issue has been raised as to the effect of this disposition upon the limited partners.

ment of a receiver. At that point, Elias moved separately for the appointment of a receiver.

Special Term denied the motion for a receiver but dismissed Serota's counterclaims on the ground that the auction results were not enforceable under the Statute of Frauds because Elias had not subscribed any written memorandum that identified the property sold or the price to be paid for each parcel. Serota has appealed from so much of the order as dismissed his counterclaims and denied his cross motion for summary judgment.

## II

Serota first contends that the Statute of Frauds has no application to partnership agreements but Elias argues that the statute applies to any transaction where interests in real property are created or a contract for the sale of real property is involved (see General Obligations Law, § 5-703, subds 1, 2). It is true, of course, that the Statute of Frauds is not applicable to a contract to form a partnership to deal in real estate because the interest of each partner in a partnership is deemed personalty (*Mattikow v Sudarsky,* 248 NY 404; *Fairchild v Fairchild,* 64 NY 471; *Pace v Perk,* 81 AD2d 444). Thus, if a partner who has purchased property for a partnership refuses to convey it, the other partners can obtain specific performance of their oral partnership agreement and compel the purchasing partner to convey to the partnership (*Mattikow v Sudarsky, supra; Pace v Perk, supra*). The situation differs, however, when a partnership agreement requires the partnership to convey partnership real estate to one of the partners individually, for, in that event, the Statute of Frauds applies because the interest to be conveyed is not considered personalty (*Najjar v National Kinney Corp.,* 96 AD2d 836; *Pounds v Egbert,* 117 App Div 756; *Backus Plywood Corp. v Commercial Decal,* 317 F2d 339; 2 Corbin, Contracts, § 411). There is no merit, therefore, in the contention that all agreements between partners involving the disposition of real property fall outside the ambit of the Statute of Frauds.

Serota argues further, however, that if this court concludes that enforceability of the auction transaction is dependent on compliance with the Statute of Frauds, the statute has been satisfied by existing memoranda and

documents. These include the written partnership agreements, the notices of termination, the written modification of the auction procedures, the transcript of the auction proceedings, and the auctioneer's summary letter. Since the auction transcript and the auctioneer's letter were not signed by either partner, Serota proffers the rule that permits signed and unsigned writings to be read together to satisfy the Statute of Frauds (see *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48). Elias retorts that the unsigned writings cannot be considered since they postdate the signed ones.

The unsigned writings issue need not be decided, however, because the validity of the auction procedures does not depend on whether a memorandum setting forth the auction results has been subscribed by the partners. Although Elias has focused on the absence of signed writings as posing a Statute of Frauds issue, resolution of that question depends on whether the partnership agreements are definite and complete. Despite the vigor with which Elias contends that the Statute of Frauds bars enforcement of the auction results, analysis reveals the real essence of his position to be a claim that the auction provisions constitute nothing more than an agreement to agree, because their enforceability depends on each partner's willingness to approve the auction results by executing additional documents signifying approval. The claim has no merit. As modified on September 14, 1982, the partnership agreements were integrated contracts because they sufficiently evidenced all the material terms which the parties had deemed relevant to the future operations of the partnerships, including the methods by which they were to be dissolved. The obligations of each partner under the dissolution paragraphs constituted part of the performance each agreed to undertake when dissolution occurred because it was not possible to establish in advance what properties the entity might own at dissolution or what their real value would then be. Thus, there was no need for additional signatures to validate the outcome of the auction.

Our conclusion derives from elementary contract law. A contract is " 'an agreement upon sufficient consideration to do, or not to do a particular thing' " (*Justice v Lang,* 42 NY 493, 496; 2 Blackstone's Comm, p 442) and involves "an

expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future" (1 Corbin, Contracts, § 13, p 29). Participation in the dissolution auction constituted performance of the obligations the parties assumed when they chose this binding method for valuation under the partnership agreements (see *Texas Gas Corp. v Shell Oil Co.,* 363 US 263; *Valashinas v Koniuto,* 308 NY 233). While the Statute of Frauds requires that certain types of contracts be evidenced by a writing (General Obligations Law, § 5-703), it does not require that each stage of the future performance provided in a contract be supported by additional signed writings that memorialize the performance (see *Kopelman v Sigel,* 31 AD2d 902, affd 26 NY2d 1029). Therefore, the auction stages of the agreement did not constitute mere agreements to agree should either partner request dissolution.

Having decided that the partnership agreements obligated the parties to perform each stage of the agreements, we must still determine whether the dissolution provisions themselves are too vague or indefinite to survive under principles of contract law or the Statute of Frauds as it applies to real estate transactions. The fact that some of the terms of the partnership agreements are flexible does not render the agreements indefinite (see *Sonnenblick-Goldman Corp. v Murphy,* 420 F2d 1169) since the practicalities of a complex transaction are entitled to significant consideration when definiteness is the issue (Farnsworth, Contracts, § 3.28, pp 201-202; Macneil, The Many Futures of Contracts, 47 So Cal L Rev 691). A flexible means of valuation is of paramount importance to partners who seek to agree on a nonjudicial method of dissolution since any permanently fixed value is likely to cause unfairness and ignore the dynamics of a business over a period of time (see Bromberg, Partnership Dissolution — Causes, Consequences, and Cures, 43 Tex L Rev 631; Comment, Drafting Problems of Partnership Agreements, 40 Cal L Rev 67). To overcome the potential inequity of prefixed prices and to furnish an avenue for determining which of the partners will come away with the partnership assets, it is common to provide for buy-sell arrangements involving offer and

counteroffer, auctions, appraisals and arbitration (see Bromberg, *op. cit.,* 43 Tex L Rev 631, 657-659; Forster, Valuing a Business Interest for Purposes of a Purchase and Sale Agreement, 4 Stan L Rev 325).

As to the generality of the property description in the agreements — "any real estate properties * * * of the partnership" — we conclude the description suffices. The description in a contract of sale need not be as detailed and exact as the description in a deed (*Boyajian v Casey,* 52 AD2d 1014; *Vandenburgh v Madarash,* 283 App Div 537). Descriptions of "all my property" or "all my lands where-ever situated" have been upheld under the Statute of Frauds (see *Wilson v Boyce,* 92 US 320, 325; *Miller v Tuck,* 95 App Div 134; *Matter of Kansas City Journal-Post Co.,* 51 F Supp 1009, 1016, affd 144 F2d 791, 807; 1A Warren's Weed, NY Real Prop, Description, § 3.01; Ann., 55 ALR 162). The same is true for descriptions of all assets of a partnership (see, e.g., *Packaging Prods. Co. v Teruya Bros.,* 58 Hawaii 580; *McAteer v McAteer,* 393 So 2d 805 [La]). Clear identification of the instant properties is a relatively simple proposition (see *Cunningham v Norwegian Lu-theran Church,* 28 Wn 2d 953), and no one contends that the parties had any difficulty in identifying the subject matter of the transaction (see *Matter of Kansas City Jour-nal-Post Co., supra*).

With respect to price, the agreements set forth a method by which the price could definitely be ascertained without the necessity of further agreement (see *Matter of McManus,* 55 NY2d 855; *Martin Delicatessen v Schuma-cher,* 52 NY2d 105, 110; 1 Corbin, Contracts, § 98). The price was not left for future negotiations and was to be arrived at independent of either party's "mere wish or desire" (see *Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069, 1071; see, also, *Willmott v Giarraputo,* 5 NY2d 250). How each partner protected his interest at the auctions was a matter for the wisdom and acumen of each — just as it would have been had some buy-sell arrangement or arbitration been the valuation method selected.

It is apparent, then, that the counterclaims should not have been dismissed on the basis of the Statute of Frauds defense asserted in Elias' motion. Serota's cross motion for

summary judgment was properly denied, however, not only because it was made before issue was joined on the counterclaims (see CPLR 3212, subd [a]; *Rich v Lefkovits,* 56 NY2d 276), but also because Elias raised an issue of fact as to whether the closing papers prepared by Serota's attorneys were inconsistent with the partnership agreements as implemented by the auction. Accordingly, the order should be modified by deleting the provision granting Elias' motion to dismiss the counterclaims of defendant Serota and substituting therefor a provision denying that motion. As so modified, the order should be affirmed insofar as appealed from, without costs or disbursements.

MANGANO, NIEHOFF and BOYERS, JJ., concur.

Order of the Supreme Court, Nassau County, dated June 27, 1983, modified by deleting the provision thereof granting plaintiff's motion to dismiss the counterclaims of defendant Serota and substituting therefor a provision denying that motion. As so modified, order affirmed insofar as appealed from, without costs or disbursements.