Walter, J.
The holders of a majority of the stock of a New York corporation here seek an adjudication that they are entitled to have the directors call a meeting of the stockholders for the purposes of (1) amending the certificate of incorporation and by-laws so as to provide for five directors instead of three, and (2) amending the by-laws so as to provide (a) that no contract of the corporation with any other person for more than one year shall be valid unless approved by a majority of the stockholders; (b) that no director of the corporation shall be eligible to vote for the ratification of any contract between the corporation and any other person from which such director derives any financial benefit; (c) that no resolution of the board of directors which provides for payment of a bonus to any officer of the corporation in excess of 5% of the. corporation’s net annual income shall be valid unless approved by a majority of the stockholders; and (d) any such resolution heretofore approved shall be invalid and unenforcible unless so ratified and approved.
Section 35 of the Stock Corporation Law provides that the certificate of incorporation of any stock corporation may be amended so as to increase or decrease the number of its directors, and also so as to change other provisions for the conduct of its affairs and the powers of its stockholders or directors. Section 13 of the General Corporation Law provides that the certificate of incorporation may contain any limitation upon the powers of its directors which does not exempt them from ■the performance of any obligation or duty imposed by law. Section 14 of the General Corporation Law gives to every corporation the power to make by-laws, not inconsistent with law, and provides that by-laws adopted at a meeting of the members of the corporation shall control the action of its directors except as therein otherwise provided. Section 35 of the by-laws of the corporation provides that they may be amended by vote of a majority of the stockholders, that the directors may make by-laws subject to by-laws made by the stockholders, and that by-laws made by the directors may be altered or repealed by the stockholders; and section 2 of the by-laws provides that the directors shall call a special meeting of the stockholders whenever requested in writing by stockholders representing not less than 25% of the outstanding stock.
*285 It thus would seem at first blush that the right here claimed is so clear and obvious that no judicial declaration of it is necessary; and the point of Presiding Justice Peck’s dissent from the affirmance of the order denying defendants’ motion to dismiss the complaint (Ripley v. Storer, 283 App. Div. 923) seems to me to be his inability to visualize how it is that these majority stockholders cannot get what they want by ordinary corporate action without a judicial declaration.
Yet defendants (two of the three existing directors) have refused plaintiffs’ request for such a meeting, and, as a result of approximately four years of practically continuous litigation between these parties, there are now in existence three judgments of this court which defendants seriously contend are binding adjudications against the existence of the right plaintiffs here claim.
Defendants also contend that the proposed amendments of the by-laws would be invalid even if adopted, because in violation of the provision of section 27 of the General Corporation Law that the business of a corporation shall be managed by its board of directors.
The corporation involved was established by the late Robert L. Ripley, a brother of plaintiff Douglas Ripley, and is named Believe It Or Not, Inc., which prompts me to exclaim: “ Believe it or not, a mess of this kind can be perpetrated even under the corporation laws of New York.”
The corporation has 100 shares of common stock of no par value. Sixty shares were owned by Robert L. Ripley, twenty shares were owned by Robert J. Hyland, and twenty shares were owned by Douglas Ripley.
Robert L. Ripley died May 27, 1949. On June 10, 1949, the corporation, acting by Robert J. Hyland, entered into a contract with defendant Douglas F. Storer by which it was agreed that for a period of ten years Storer was to exclusively represent the corporation for radio, television, motion pictures and theatres and be in complete charge of all activities in those fields and retain for his services 40% of all income received in connection therewith. On September 19,1949, by contract similarly made with Storer by the corporation acting by Robert J. Hyland, that contract of June 10, 1949, was extended so as to make Storer the exclusive representative of the corporation in handling all contracts for books, except that Storer’s commission in respect of any book transaction was limited to 25% of all sums received by the corporation up to $2,500. On November *286 15, 1949, by contract similarly made with Storer by the corporation acting by Eobert Hyland, the contracts of June 10, 1949, and September 19, 1949, were extended so as to make Storer the corporation’s exclusive representative in negotiating for the manufacture and sale of “ Believe It Or Not ” postal cards, toys, puzzles, games, etc.
On February 16, 1951, Eobert J. Hyland was removed as president and general manager, plaintiff Douglas Eipley and defendants Douglas Storer and Harry Colwell, Jr., were elected as directors; defendant Douglas Storer was elected as president and general manager, plaintiff Douglas Eipley was elected as first vice-president, Edward P. F. Eagan was elected as second vice-president, Morton Miller was elected as secretary, and defendant Colwell, Jr., was elected as treasurer. Eipley, Storer and Colwell still continue as directors. Storer still continues as president, and Eipley still continues as first vice-president.
In May, 1951, plaintiff Douglas Eipley and defendant Storer purchased the sixty shares of stock which had been owned by the late Eobert L. Eipley. Plaintiff Herlart, Inc., later (in July, 1951) acquired the twenty shares owned by Eobert J. Hyland, and the stockholders of record are now:
Douglas Eipley 48% shares
Herlart, Inc. 20 “
Douglas Storer 28% “
Donald Gr. Millar 3
100 shares
Defendants claim that Donald Gr. Millar is the equitable owner of three of the shares standing in the name of Douglas Eipley; but even if that claim be true, the plaintiffs herein are yet the owners, beneficially and of record, of sixty-five and one-half shares, while defendants Storer and Colwell, two of the three directors, are the owners of only twenty-eight and one-half shares.
On March 8, 1951, the directors (Eipley, Storer, and Colwell) resolved that, for the next year, and each year thereafter until terminated by the board, the president and first vice-president each be paid 20% of the gross sums earned by the corporation over and above $100,000 per annum, in addition to their regular salary and/or expenses.
In March, 1952, plaintiffs herein served upon defendants Storer and Colwell a request for the calling of a meeting of *287 stockholders for the purpose of voting on the removal of Storer and Colwell as directors and of electing other directors in their place. Storer thereupon brought an action in this court, Westchester County, to declare such request a nullity as in violation of an alleged agreement to continue Storer and Colwell in office as directors, and to enjoin the holding of such a meeting. That action was tried before Mr. Justice Eager, who found that there was an oral agreement that Storer and Colwell should continue as directors as long as Storer or Millar owned stock in the corporation, and that such oral agreement is valid and enforcible. (Storer v. Ripley, 1 Misc 2d 235, affd. 282 App. Div. 950, motion for leave to appeal denied 282 App. Div. 1061, 306 N. Y. 985.)
The judgment entered in that action upon that decision adjudges that there is a valid agreement between Storer and Ripley whereby, among other things, they have mutually agreed that Storer and Colwell shall be and continue to be directors of Believe It Or Not, Inc., as long as Storer or Donald Gr. Millar owns stock of that corporation, and that such agreement is binding upon Ripley. The judgment further enjoins Ripley and Herlart, Inc., from breaching or inducing a breach of that agreement, directs Ripley and Herlart, Inc., to vote for Storer and Colwell as directors in accordance with that agreement, declares that the above-mentioned request for the calling of a meeting for the purpose of voting for the removal of Storer and Colwell is a nullity because in violation of the agreement so found, and enjoins the holding of any meeting pursuant to such notice.
Manifestly and plainly, it seems to me, an agreement that Storer and Colwell shall continue as directors as long as Storer or Millar holds stock of the corporation is not an agreement that they shall be two of only three directors or an agreement that the number of directors shall not be increased. Increasing the number of directors is not a breach of an agreement that Storer and Colwell shall continue as directors as long as Storer or Millar holds stock of the corporation; and a direction that Ripley and Herlart, Inc., vote for Storer and Colwell as directors in accordance with that agreement does not prevent them from voting also for other persons as additional directors, if the certificate of incorporation be amended so as to provide for additional directors. No issue as to the right to increase the number of directors or amend the by-laws was involved or litigated or decided in the action before Mr. Justice Eager.
*288 Increasing the number of directors will not destroy or impair any right or interest established in that action. Neither will any such right or interest be destroyed or impaired by the proposed amendments to the by-laws.
I hence conclude that the judgment in that action is not in any way a bar to the adoption of the amendments plaintiffs now request.
In April, 1953, plaintiffs herein brought an action in this court praying, first, that Storer’s contract of June 10, 1949, be adjudged illegal and invalid, and, second, that execution of a proposed contract between Believe It Or Not, Inc., and Grlobion Productions, Inc., be enjoined.
That action was tried before Mr. Justice Steueb, who ruled that as Ripley had voted to ratify the contract of June 10, 1949, he could not complain of it, and that as Herlart, Inc., had purchased its stock after that contract had been ratified, it could not complain of it. As to that contract, the plaintiffs’ complaint was accordingly dismissed upon the merits. As to the proposed contract with Q-lobion Productions, Inc., Mr. Justice Steueb stated reasons why execution of it might be enjoined; defendants then announced that they had renounced their intention of entering into the contract, and because of that fact the cause of action to enjoin its execution was dismissed, but not on the merits.
There again, no issue as to the right to increase the number of directors or amend the by-laws was presented, litigated or decided; and there is nothing in that judgment which adjudicates anything against the right to increase the number of directors or the right to amend the by-laws in the respects now requested.
In May, 1953, plaintiffs herein brought another action in this court in which they sought to have declared invalid the resolution of March 8, 1951, providing for the payment of 20% of the corporation’s gross earnings in excess of $100,000 to the president (Storer) and first vice-president (Ripley) and to require Storer to repay to the corporation $2,919.66 paid him in March, 1953, under that resolution. That action was tried before Mr. Justice Fbaxk, who ruled (Ripley v. Colwell, 206 Misc. 46) that Ripley could not complain of that resolution because he had voted for it, and that Herlart, Inc., could not complain of it because it had acquired its stock after the resolution had been adopted, and accordingly dismissed the complaint.
Certainly there is nothing in that which adjudicates anything with respect to the right to increase the number of directors or the right to amend the by-laws.
*289 If the existing certificate of incorporation contained a provision against increasing the number of directors, the right to increase would not exist (Ripin v. United States Woven Label Co., 205 N. Y. 442); and if there were a written agreement by all the stockholders that the number shall not be increased, the right to increase would not exist (Christal v. Petry, 275 App. Div. 550, affd. 301 N. Y. 562). But as there is no provision in the existing certificate limiting the right to increase, .and no unanimous written agreement of all the stockholders limiting the right, it follows that the right to increase is absolute (Christal v. Petry, 275 App. Div. 550, 557, supra).
I turn now to the contention that the proposed by-laws violate, or at least if adopted would be inconsistent with, the provision of section 27 of the General Corporation Law that the business of a corporation shall be managed by its board of directors; and, at the very outset of any discussion of that contention, it should be emphasized that in one of the cases strongly relied upon by defendants the Court of Appeals, in referring to that provision, immediately added: “ subject, however, to the valid by-laws adopted by the stockholders ”, and cited what is now subdivision 5 of section 14 of the General Corporation Law and section 60 of the Stock Corporation Law. (Manson v. Curtis, 223 N. Y. 313, 322.)
It, of course, is true that corporate directors are not in any strict sense agents of the stockholders, that their powers are conferred upon them by law, and in a very important sense are original and undelegated, that they have an obligation to act for the corporation, that they are to a very large extent free from stockholder control, and that no agreement or by-law which deprives them of their power to act for and in the best interest of the corporation is valid (Hoyt v. Thompson’s Executor, 19 N. Y. 207, 216; People ex rel. Manice v. Powell, 201 N. Y. 194, 200, 201; Manson v. Curtis, 223 N. Y. 313, supra-; McQuade v. Stoneham, 263 N. Y. 323; Long Park v. Trenton-New Brunswick Theatres Co., 297 N. Y. 174; Matter of Abbey [Meyerson], 299 N. Y. 557; Matter of Lone Star Shipbuilding Co., 6 F. 2d 192; Jackson v. Hooper, 76 N. J. Eq. 592; Creed v. Copps, 103 Vt. 164; Marvin v. Solventol Chem. Prod., 298 Mich. 296; Kaplan v. Block, 183 Va. 327).
But it is equally true that section 27 of the General Corporation Law does not establish an absolute or universal norm from which there can be no variation (Clark v. Dodge, 269 N. Y. 410, 415), that its broad declaration is subject to the right of the *290 stockholders to adopt by-laws not in themselves inconsistent with some more specific provision or principle of corporate control (Manson v. Curtis, 223 N. Y. 313, 322, supra; Benintendi v. Kenton Hotel, 181 Misc. 897, 899, affd. 268 App. Div. 857, mod. 294 N. Y. 112), that some limitations may be placed upon the power of directors (Kaplan v. Bloch, 183 Va. 327, 336) that by-laws may so restrict the directors’ authority as to make the validity of their action rest upon the concurrence of the stockholders (Beveridge v. New York Elevated R. R. Co., 112 N. Y. 1, 22); Levin v. Mayer, 86 Misc. 116, 119; Stevens v. Davison, 18 Grat. [59 Va.] 819, 827), and that slight conflicts with the broad declaration of section 27 are not illegal (Lorillard v. Clyde, 86 N. Y. 384; Drucklieb v. Sam H. Harris, Inc., 209 N. Y. 211, 215; Clark v. Dodge, 269 N. Y. 410, 415, 416).
It has been held that a by-law may provide that the directors may not remove the president or chairman of the board (Matter of Buckley, 183 Misc. 189). It has been thrice intimated, if not actually held, that stockholders might control the directors upon the question whether or not to enforce in the courts a cause of action for damages (United Copper Co. v. Amalgamated Copper Co., 244 U. S. 261-263, quoted in Koral v. Savory, Inc., 276 N. Y. 215, 217, and Sterling Industries v. Ball Bearing Pen Corp., 298 N. Y. 483, 490). By-laws fixing the compensation of officers have been held to be within the power of stockholders to adopt (Rogers v. Hill, 289 U. S. 582, 588, 589).
My conclusion from a consideration of all these authorities hence is that it would not be a violation of section 27 of the General Corporation Law or otherwise illegal for the stockholders to adopt by-laws which will provide (a) that no contract for more than a year shall be valid unless approved by a majority of the stockholders, (b) that no director shall be eligible to vote for the ratification of any contract from which he derives a financial benefit, and (c) that no resolution which provides for the payment of a bonus to any officer in excess of 5% of the corporation’s net annual income shall be valid unless approved by a majority of the stockholders.
I do not think it competent for either directors or stockholders to assert by by-law that any resolution heretofore approved shall be invalid unless ratified and approved by the stockholders, because an assertion of that kind seems to me not to be a by-law at all.
By-laws are laws for the regulation of the business of the corporation, and I think it essential that they be legislative rather than judicial in character, that is, that they shall make *291 rules for future action rather than pronounce judgment upon things that now exist (see Prentis v. Atlantic Coast Line, 211 U. S. 210, 226, and Ross v. Oregon, 227 U. S. 150, 163).
I conclude, therefore, that plaintiffs have a right to have the directors call a special meeting of stockholders for the purposes of (1) amending the certificate of incorporation and the by-laws so as to provide for five directors instead of three, and (2) amending the by-laws so as to provide (a) that no contract of the corporation with any other person for more than one year shall be valid unless approved by a majority of the stockholders, (b) that no director of the corporation shall be eligible to vote for the ratification of any contract between the corporation and any other person from which such director derives any financial benefit, and (c) that no resolution of the board of directors which provides for payment of a bonus to any officer of the corporation in excess of 5% of the corporation’s net annual income shall be valid unless approved by a majority of the stockholders. I conclude, also, that it will be the duty of the directors to comply with plaintiffs’ request for the calling of such special meeting and to convene such meeting and record the result thereof and take such steps as are required by law in order to make the amendments legally effective.
The interest of these plaintiffs, however, is not solely in calling such meeting and adopting such amendments. They want to know, also, whether by means of such amendments they will be able to get rid of Storer’s contracts of June 10, September 19, and November 15, 1949, and the resolution of March 8, 1951, for the payment to Storer of 20% of the corporation’s gross earnings over $100,000; and insofar as that question turns on the effect of the prior judgments as res judicata (as distinguished from the effectiveness of such corporate action as may be taken by the corporation after the amendments are adopted), it is appropriate that the question be considered and decided in this action.
The judgment directed by Mr. Justice Stetjer undoubtedly adjudicates that, under the conditions which then existed, these plaintiffs had no standing as stockholders to attack in court the validity of Storer’s contract of June 10,1949, and the judgment directed by Mr. Justice Frank undoubtedly adjudicates that, under the conditions then existing, these plaintiffs had no standing as stockholders to attack in court the validity of the resolution of March 8, 1951; but neither of those judgments is an adjudication that there is no action which the corporation can take which will have the effect of terminating or of enabling *292 the corporation to terminate, or possibly even to rescind, that contract or that resolution. The judgments do not adjudicate as to whether or not, after changing the certificate of incorporation and the by-laws, plaintiffs will be able to induce corporate action which will undo the acts which Mr. Justice Steueb, and Mr. Justice Fbauk held prevented plaintiffs from attacking the contract and resolution in court.
Defendants argue that, although no issue as to the right to increase the number of directors or amend the by-laws was litigated or decided in the actions before Mr. Justice Steueb and Mr. Justice Feank, nevertheless the judgments rendered in those actions establish the validity of that contract and that resolution, and that no judgment to the contrary is now possible because any judgment to the contrary would destroy or impair the substance of the rights and interests established by those judgments.
I think the very case principally relied upon to support that argument (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304) is a complete refutation of it; for in that case it was held that a judgment adjudicating that the liability of defendants under a written contract was joint, was not a bar to a counterclaim by defendants for a reformation of the contract so as to make defendants’ liability several.
Allen v. United States Fire Ins. Co. of N. Y. (270 N. Y. 597) may sound like a decision to the contrary, but the Schuylkill case (supra) is still being cited with great frequency and I cannot believe that its actual holding has been in effect overruled without opinion and without comment or mention of its holding.
Furthermore, the holding in the Schuylkill case is but a single illustration of many authorities establishing a rule or principle of universally acknowledged validity, viz., the rule that judgments are the result of an application of existing law to existing or past facts (Prentis v. Atlantic Coast Line, 211 U. S. 210, 226, supra; Ross v. Oregon, 227 U. S. 150, 163, supra) and in the very nature of things they cannot merge or bar or operate as an estoppel against the assertion of a claim based upon subsequently occurring facts or subsequently enacted law (2 Freeman on Judgments [5th ed.], §§ 712-715; 30 Am. Jur., Judgments, § 206, p. 943; Thompson v. Washington Nat. Bank, 68 Wash. 42; Matter of Pomeroy, 51 Mont. 119; Blair v. Commissioner, 300 U. S. 5, 9; West Side R. R. Co. v. Pittsburgh Constr. Co., 219 U. S. 92, 102, 103; Memphis City Bank v. Tennessee, 161 U. S. 186, 192, 193; City of New York v. Coney Is. Fire Dept., 259 *293 App. Div. 286, 289, 290; Bittner v. West Virginia-Pittsburgh Coal Co., 15 F. 2d 652, 655; Klaber v. Lakenan, 64 F. 2d 86, 92; City of Shreveport v. Shreveport Ry. Co., 38 F. 2d 945; Hurd v. Albert, 214 Cal. 15, 26; Security Sav. Bank v. Connell, 198 Iowa 564; Cox v. Revelle, 125 Md. 579).
That principle has been applied in many cases in which the principle itself was not expressly formulated.
An adjudication that a grant of a right to conduct a lottery is valid is not a bar to a proceeding to stop the conduct of that lottery after the State has constitutionally revoked the grant (Douglas v. Kentucky, 168 U. S. 488).
An adjudication that certain bonds are invalid is not a bar to a contrary adjudication after the enactment of a statute which supplies the defect which led to the first adjudication (Utter v. Franklin, 172 U. S. 416).
An adjudication that a contract with a county is invalid is not a bar to a subsequent action on the contract after the contract has been legalized by a curative act of the Legislature (Steele Co. v. Erskine, 98 F. 215).
An adjudication that a contract is invalid because the agent purporting to make it was not authorized to make it is not a bar to another action on the contract after the State has passed a statute authorizing or ratifying the act of its agent in making the contract (State of Wisconsin v. Torinus, 28 Minn. 175).
An adjudication that certain school district bonds are valid is not a bar to a defense in a subsequent action that like bonds issued after a change in the law regulating the authority of school districts to issue bonds were not valid (State ex rel. Bellingham School District No. 301 v. Clausen, 109 Wash. 37).
An adjudication that a county is not liable for the services of accountants who audited its books at the direction of the insurance commissioner is not a bar to an action for such services after the Legislature has enacted that the county shall be liable for such services (Mackenzie v. Douglas Co., 91 Ore. 375).
A decree refusing to enforce a mortgage because of a stipulation upon its face for usurious interest is not a bar to a subsequent suit for the enforcement of the mortgage after the enactment of a statute authorizing such a suit, despite a stipulation for usurious interest (Wallace v. Goodlett, 104 Tenn. 670).
I do not hold that, even with additional directors and new by-laws, it will be possible for the corporation to terminate or rescind contracts heretofore made. That question, I think, should not be decided in this action.
*294 But, on the authority of the cases just cited, I hold that if under new by-laws and with additional directors the corporation finds a way legally to terminate or rescind contracts it heretofore made, the judgments heretofore rendered will not be a bar to such corporate action and will not prevent a new action based upon new rights created by new corporate action taken after such judgments were rendered.
The foregoing constitutes the decision required by section 440 of the Civil Practice Act and I direct the entry of judgment in accordance therewith, with costs to plaintiffs.