NATIONAL EQUIPMENT RENTAL,
LTD., Appellant,

v.

ESTHERVILLE FORD, INC. and Doyle
Seley, Appellees.

No. 64988.

Supreme Court of Iowa.

Dec. 23, 1981.

Alvin J. Ford of Whicher, Ford & Gurdin, Sioux City, for appellant.

William B. Ridout and Kendall R. Surfass of Sanderson, Sanderson, Ridout, Martens & Surfass, Estherville, for appellees.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal requires us to decide whether a lessee can assert a counterclaim for breach of a lease in an action brought in Iowa by the lessor to enforce a default judgment obtained in New York for the balance due under the lease.

Defendant Doyle Seley is the owner and president of Estherville Ford, Inc., an automobile dealership located in Estherville, Iowa. In addition to selling new and used automobiles, Estherville Ford provides maintenance service for all makes of automobiles. We will speak of Seley as including Estherville Ford.

To increase the amount of service work performed by his business, Seley became interested in obtaining a Regal Muffler franchise. The franchise consisted of a pipe bending machine, numerous bending dies, a card index system, an inventory of mufflers and straight exhaust pipe, and a Regal Muffler display sign. The machine was designed to bend and modify straight exhaust pipe to fit the emission systems of various automobiles. Each card from the index system contained instructions for forming an exhaust pipe to fit a particular model of vehicle. The machine eliminated the need to maintain an inventory of preformed exhaust pipe.

Seley supplied the necessary information on a Regal Muffler advertisement card found in a trade journal and sent it to the company. On June 2, 1975, a Regal representative visited Seley in Estherville to explain the details of the franchise program. Seley signed a franchise agreement with Regal and became a Regal Muffler dealer.

The representative also had a written lease in which plaintiff National Equipment Rental, Ltd. was the lessor. He informed Seley that he was not an agent of National but that National regularly entered into written leases whereby it purchased the machines and accessories and leased them to the dealers.

On June 20, 1975, the Regal representative made a return visit to Estherville, and Seley, on behalf of Estherville Ford, signed a lease with National to lease the pipe bending machine and accessories. Seley also executed a document personally guaranteeing all payments under the lease. The representative sent the lease to National, and that company accepted it on July 22, 1975.

The pipe bending machine and accessories were delivered to Seley in August 1975. A Regal representative trained several of Seley's employees to operate the system, and Seley began making the required monthly payments to National. Eventually, however, problems arose with the card index system and with the availability of exhaust pipe. Seley contacted Regal but was informed that the company had gone out of business. He also contacted National but received no assistance. Since these problems rendered the machine incapable of producing income, Seley ceased making the lease payments. In August 1978 Seley returned the pipe bending machine to National at the latter's request.

National subsequently instituted an action against Seley in the Supreme Court of New York, County of Nassau, to recover the balance due under the lease. Seley was personally served with an original notice and petition in Estherville. Personal jurisdiction of Seley was obtained through the following clause in the lease:

This lease shall only be binding when accepted by the Lessor of its North New Hyde Park, N.Y. office and shall be deemed to have been made in Nassau County, New York and shall be governed by the laws of the State of New York except for local recording statutes. As part of the consideration for the Lessor's executing this lease, Lessee agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in courts having situs within the State of New York and the Lessee hereby consents to the jurisdiction of any local, state or federal court located within the State of New York and waives personal service of any and all process upon the Lessee herein, and consents that all such service or process shall be made by certified mail, return receipt requested, directed to the Lessee at the address hereinabove stated; and service so made shall be complete two (2) days after the same shall have been posted as aforesaid.

Seley does not contend that the above clause was ineffective to grant personal jurisdiction to the New York court. *See National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Joseph L. Wilmotte & Co. v. Rosenman Bros.,* 258 N.W.2d 317, 328–29 (Iowa 1977). Seley failed to appear or answer in the New York action and the court entered a default judgment for National in the amount of $9,542.10.

National thereafter commenced an action in Emmet County, Iowa, to enforce its New York judgment. Seley answered and denied the allegations of the petition. National then moved for summary judgment. Seley responded by amending his answer to assert several affirmative defenses and a counterclaim. He alleged that under the lease National had promised to provide Seley with an adequate card index system and sufficient quantities of exhaust pipe and had failed in both respects, and that noncompliance with the lease prevented substantial use of the pipe bending machine. He further alleged that National had promised to give Seley proper credit on its account for the return of the pipe bending machine, but failed to do so. The value of the machine was alleged at $10,000 and the prayer in the counterclaim was for that amount. Seley did not allege that he had incurred any monetary damage as a result of National's failure to provide the card index system and inventory.

In ruling on National's motion for summary judgment, the trial court found that the New York judgment was entitled to full faith and credit in Iowa and accordingly granted the motion. The trial court also held, however, that Seley was entitled to a jury trial on his counterclaim. The trial court therefore stayed entry of National's judgment and execution thereon pending disposition of the counterclaim. *See Farmers Cooperative Elevator Co., Panora v. Knapp,* 259 N.W.2d 762, 764 (Iowa 1977).

National moved to dismiss the counterclaim on the ground that it was barred by collateral estoppel. The trial court relied on the following clause in the lease agreement to reject National's argument: "Lessee hereby waives a trial by jury and the right to interpose any counterclaim or offset of any nature or description in any litigation between the Lessee and Lessor [National] with respect to this lease, the property covered hereunder and repossession hereof." According to the trial court, that clause effectively deprived Seley of a fair opportunity to raise his counterclaim in the prior New York litigation. In the absence of a fair opportunity to litigate the claim, the trial court concluded that collateral estoppel was not applicable and hence denied National's motion to dismiss.

At trial Seley amended the counterclaim in several respects. He first alleged that National's failure to provide an adequate card index system and inventory of exhaust pipe constituted a breach of contract which damaged him in the amount of $10,000. He also increased the prayer from the initial $10,000 figure to $20,000. After trial the jury returned a verdict of $12,000 for Seley on the counterclaim. National moved for a new trial or in the alternative for judgment notwithstanding the verdict. These motions were denied, and National appealed.

On appeal National asserts that (1) the trial court erred in failing to dismiss Seley's counterclaim on the basis of collateral estoppel, and (2) the trial court committed several procedural and evidentiary errors in the trial on the counterclaim. We conclude that the counterclaim was barred by collat-eral estoppel except in one respect, and we do not reach the second contention.

National asserts that Seley was required by the doctrine of collateral estoppel to litigate his breach of contract claim in the prior New York action. National argues that a necessary determination supporting the New York judgment was that it had successfully performed its obligations under the agreement. It therefore contends that Seley is precluded from asserting the counterclaim for breach of contract in the present action.

I. *Choice of law.* Initially we must decide whether Iowa or New York law will be applied to determine the preclusive effect of National's New York judgment.

▮▮▮ The full faith and credit clause of the United States Constitution states: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S.Const. art. 4, § 1. That clause renders the doctrines of res judicata and collateral estoppel compulsory as between the States. *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186, 188 (1963) ("Full faith and credit ... requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it."); *Phillips v. Cooper,* 253 Iowa 359, 363, 112 N.W.2d 317, 319 (1961); Vestal, *Res Judicata/Preclusion* V–120 (1969). It requires the courts of each state to give to the judgment of another state the same preclusive effect between the parties as is given such judgment in the state in which it was rendered, and this is so even if the judgment is obtained by default. *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669, 673 (1929). Under the full faith and credit clause, the preclusive effect of a judgment must be determined by the law of the state in which it was rendered. *Restatement (Second) of Conflicts of Laws* § 95, and Comment *a* (1971). We must therefore apply New York law to determine whether the New York judgment precludes Seley's counterclaim. *Restatement, supra* § 95, Comment *g* ("The local law of the

State where the judgment was rendered will be consulted to determine ... whether a defendant will be precluded from raising in a subsequent proceeding issues that he could have, but failed to, assert in a counterclaim in the original proceeding."); *Secor v. Siver*, 165 Iowa 673, 679, 146 N.W. 845, 848 (1914); *Folsom v. Winch*, 63 Iowa 477, 478, 19 N.W. 305, 306 (1884).

II. *Collateral estoppel under New York law.* We turn therefore to the New York law on collateral estoppel.

■ A. Under New York law all counterclaims are permissive. N.Y.Civ. Prac.Law (McKinney) § 3019 (1974). A defendant who has a claim against the plaintiff may assert it as a counterclaim or choose to bring it as a separate action. N.Y.Civ.Prac.Law (McKinney) C 3019:2 (1974). That rule, however, is subject to qualification by the doctrine of collateral estoppel. Where, in the first action, issues essential to the success of the defendant's subsequent claim are determined against him, the doctrine of collateral estoppel will apply to prevent relitigation of those issues when the defendant brings his separate action. In this sense the name permissive counterclaim is misleading, for if the defendant fails to assert his claim in the first action as a counterclaim he may well find himself effectively precluded from bringing his claim later as a separate action. 5 J. Weinstein, H. Korn, A. Miller, *New York Civil Practice* ¶ 5011.20 (1981); D. Siegel, *New York Practice* § 452 (1978); 9 Carmody-Wait 2d *Judgments* § 63:210 (1966). After noting that counterclaims are permissive in New York, a practice commentary in the New York Code continues:

> When the defendant's claim does have a relationship to the plaintiff's, however, the defendant had better consider carefully the potential effect of the doctrine of collateral estoppel, which can have the same impact as a compulsory counterclaim rule. It may still happen, therefore, that the defendant's failure to have interposed his claim as a counterclaim will result in its forfeiture not merely because he withheld it, *but because a fact*

> *adjudicated in the course of the trial of plaintiff's claim disposes of defendant's claim as well.*

N.Y.Civ.Prac.Law (McKinney) C 3019:2 (1974) (emphasis added). Thus if the doctrine of collateral estoppel applies to the present case to preclude relitigation of the issue of National's performance under the agreement, the fact that Seley's counterclaim is technically permissive is uncontrolling.

■■ The judgment in National's New York action was entered upon default. Several authorities adopt the position that default judgments should not provide the basis for collateral estoppel. *Restatement (Second) of Judgments* § 68, Comment e (Tent.Draft No. 4 1977); 1B *Moore's Federal Practice* ¶ 0.444, at 4006–07 (1980); Note, *Collateral Estoppel in Default Judgments: The Case for Abolition*, 70 Colum.L.Rev. 522 (1970). New York case law, however, is to the contrary. Although no issues in an action are actually contested, New York courts hold that a default judgment is to be given collateral estoppel effect thereby precluding relitigation of all matters necessarily determined by and essential to sustain the judgment. *Pace v. Perk*, 81 A.D.2d 444, 460, 440 N.Y.S.2d 710, 720 (1981); *119 Rosset Corp. v. Blimpy of New York Corp.*, 65 A.D.2d 683, 684, 409 N.Y.S.2d 735, 736 (1978); *Hambly v. Aetna Casualty and Surety Co.*, 51 A.D.2d 567, 568, 378 N.Y.S.2d 632, 634 (1976); *Mitchell v. Insurance Co. of North America*, 40 A.D.2d 873, 874, 338 N.Y.S.2d 92, 94 (1972); Weinstein, *supra* ¶ 5011.30; Siegel, *supra* § 451; 9 Carmody-Wait 2d *Judgments* § 63:225 (1966); Rosenberg, *Collateral Estoppel in New York*, 44 St. John's L.Rev. 165, 174 (1969) ("[The New York decisions] have indicated that defaults will not only preclude proof on issues that were alleged and were "material" or "essential" matters in the former suit, but that they will also foreclose matters that might have been raised and decided."); Annot., 77 A.L.R.2d 1410 (1961). The fact that Seley defaulted and did not actually litigate the factual issues is thus no impediment to the application of collateral estoppel.

B. We consider therefore the requirements for collateral estoppel in New York and inquire whether they have been satisfied in the present case. In a 1969 decision, the New York Court of Appeals held that collateral estoppel requires (1) an issue which has necessarily been decided in a prior action and is decisive of the present action, and (2) a full and fair opportunity in the prior action to contest the decision said to be controlling in the second action. *Schwartz v. Public Administrator of Bronx County*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969). *See also Hines v. City of Buffalo*, 79 A.D.2d 218, 219, 436 N.Y.S.2d 512, 515 (1981); *Anonymous v. Anonymous*, 77 A.D.2d 554, 555, 430 N.Y. S.2d 613, 614 (1980); Weinstein, *supra* ¶ 5011.25; Siegel, *supra* § 457; 9 Carmody-Wait 2d *Judgments* 63:204 (1966).

1. With regard to the first requirement, Seley argues that the issue of whether National breached the lease was not determined by the default judgment and therefore the identity-of-issue test must fail. His argument, however, overlooks the rule that a judgment is conclusive as to all matters necessary to sustain that judgment, whether those matters were actually litigated or not. *Statter v. Statter*, 2 N.Y.2d 668, 672, 163 N.Y.S.2d 13, 16, 143 N.E.2d 10, 12 (1957); *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 308, 165 N.E. 456, 458 (1929); *Pray v. Hegeman*, 98 N.Y. 351, 358 (1885). According to one authority:

> The estoppel of a former judgment extends to every material matter within the issues which was expressly litigated and determined, and *also those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered.*

9 Carmody-Wait 2d *Judgments* § 63:204 (1966) (emphasis added). *See also* Weinstein, *supra* ¶ 5011.27; Siegel, *supra* § 464 ("the estoppel doctrine will apply not only to matters actually litigated, but also to all which are necessarily established by the earlier judgment, litigated or not"); 2 *Free-*

*man on Judgments* § 693 (5th ed. E. Tuttle 1925) ("Matters which follow by necessary and inevitable inference from an adjudication because the judgment could not have been rendered without determining them are as effectively concluded thereby as though specifically and in terms adjudicated."). The inquiry thus becomes whether the issue of National's performance of the agreement was necessarily decided in the New York action.

In an 1899 New York case one Pirkl entered into a contract with American to perform certain work and to furnish certain materials. *American Grocery Co. v. Pirkl*, 25 Misc. 727, 55 N.Y.S. 606 (App.Term 1899). After completing the work Pirkl brought an action to recover payment for the work and material. Judgment was rendered in favor of Pirkl for the full amount of his claim. American later instituted an action for breach of contract on the ground that Pirkl had failed to supply proper material. Pirkl pleaded his former judgment as a bar to American's action, but the trial court found for American. In reversing the judgment the Appellate Division stated:

> The question as to the performance of the contract by Pirkl was necessarily involved in the action in which the judgment was recovered, and such judgment was necessarily a determination that Pirkl had fully complied therewith, and that the grates in question were of the kind which the plaintiff herein had ordered. It was a final adjudication upon the matters involved here, and under familiar principles the plaintiff was precluded from again bringing them into question.

*Id.* at 607 (emphasis added).

The court reached a similar result in *119 Rosset Corp. v. Blimpy of New York Corp.*, 65 A.D.2d 683, 409 N.Y.S.2d 735 (1978). There collateral estoppel was based on a default judgment. The buyers of equipment sued the sellers for breach of contract arising out of the sale. The seller counterclaimed for the balance due on promissory notes given by the buyer for payment. The

buyer defaulted on the seller's counterclaim and the seller thereafter moved to dismiss the buyer's complaint relying on the preclusive effect of his counterclaim judgment. The trial court denied the motion. The Appellate Division, although using the term res judicata instead of collateral estoppel, reversed:

> Res Judicata is a bar to plaintiffs' causes of action for fraud and breach of quiet enjoyment. Having failed to set up the alleged fraud or breach of quiet enjoyment as defenses to defendants' counterclaims on the notes, plaintiffs are deemed to have admitted their obligation and are barred by the doctrine of res judicata from raising these claims anew. The doctrine of res judicata is applicable to a judgment taken by default which has not been vacated as well as to defenses raised in the prior action or which, though not raised, could have been.

*Id.* at 684, 409 N.Y.S.2d at 736.

In an 1879 decision one Dunham sued Bower for breach of a contract under which Bower was required to ship a load of apples to market before a certain date. *Dunham v. Bower*, 77 N.Y. 76 (1879). Bower missed the cutoff date and the apples froze and were destroyed. As a defense, Bower pleaded collateral estoppel based on an earlier judgment against Dunham for freight charges. The trial court dismissed Dunham's claim and the dismissal was affirmed on appeal. The New York Court of Appeals noted that "[t]he action for freight in transporting the apples adjudged that the plaintiff in that action *had performed his contract.*" *Id.* at 80 (emphasis added).

A more recent statement of this proposition is *Rosenberg v. Del-Mar Division, Champion International Corp.*, 56 A.D.2d 576, 391 N.Y.S.2d 452 (1977). That case involved an action for breach of contract. In a prior action between the parties the defendant obtained judgment for the price of goods sold to the plaintiff. The defendant argued that the breach action was barred by its earlier judgment, but the trial court disagreed. In reversing, the Appellate Division stated:

Moreover, the contract claim is barred by reason of *res judicata.* In a prior action between defendant and plaintiff's assignor, on the same contract, a judgment was obtained by the defendant herein for goods sold and delivered. It was essential in the prior action to find that no defense existed to the claim for payment. Since the prior action, of necessity, determined that no defense existed to the claim for payment, plaintiff cannot now raise, as an issue, untimely delivery as a breach of the contract. The prior decision stands as *res judicata* of those issues it had determined.

*Id.* at 577, 391 N.Y.S.2d at 453. *See also Bluestone v. Jones*, 233 N.Y.S.2d 146 (Sup.Ct. 1962) (prior judgment for defendant in breach of contract action necessarily adjudicated legality of agreement and due performance thereof by defendant and precludes plaintiff from thereafter suing for breach).

Also instructive is the line of New York cases concerning malpractice claims brought after a judgment for services has been rendered. A recent example is *Chisholm-Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70 (1980). There a client sued its attorneys for malpractice. In an earlier action the attorneys had obtained a judgment against the client for their services rendered. The attorneys pleaded their judgment as a bar to the client's later action, and the trial court sustained a motion to dismiss. The Appellate Division affirmed:

> *Thus, the prior action between these parties necessarily determined that services were performed by the attorneys* for the client and that compensation was due them, and it is the nature of that claim, not its form, which controls here and estops the client from maintaining the present action. To hold otherwise would permit destruction of rights adjudicated in the first judgment by a different judgment in a subsequent action .... True enough, it was not required to plead malpractice as a counterclaim in the prior action but whether or not it did so is

irrelevant. It could have raised the issue as a defense and it was required to do so or be precluded on it.

*Id.* at 146, 434 N.Y.S.2d at 73 (emphasis added, citations omitted). Other cases include *Blair v. Bartlett,* 75 N.Y. 150 (1878); *Gates v. Preston,* 41 N.Y. 113 (1869); *Kossover v. Trattler,* 82 A.D.2d 610, 442 N.Y. S.2d 554 (1981) (default judgment given collateral estoppel effect); *Tillotson v. Shulman,* 73 A.D.2d 688, 423 N.Y.S.2d 236 (1980); *Goldfarb v. Cranin,* 35 Misc.2d 126, 229 N.Y.S.2d 43 (1962) (default judgment basis for collateral estoppel); *Rose v. Treitman,* 143 N.Y.S.2d 926 (Sup.1955).

■ Our review of the New York decisions convinces us the New York courts would find National's judgment determined that National had performed its obligations under the agreement. With due performance adjudicated in the prior action, Seley's argument that no identity of issues exists must fail.

2. Seley also contends, however, that the second requirement of collateral estoppel under New York law is missing. He says he did not have a full and fair opportunity to litigate the issue of National's performance under the lease. He relies on the clause which prevents him from interposing any counterclaim in litigation between National and him concerning the lease. The New York cases that discuss the full and fair opportunity requirement principally concern multi-party cases in which the preclusive effect of a judgment is sought to be applied by or against a person not a party to the prior action. *See Schwartz v. Public Administrator of Bronx County,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *B. R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).

We find no necessity, however, to determine whether the contract clause prohibiting counterclaims and offsets is enforceable in New York or, if so, whether it would deprive Seley of a full and fair opportunity to interpose his contention that National breached the lease.

III. *Effect of no counterclaim or offset clause.* Seley's counterclaim consists of two claims, one for damages for National's alleged breach and the other for offset for the returned machinery and accessories.

■ A. As to the damage claim in the counterclaim, the contract clause did not prevent Seley from interposing *defenses* by way of *answer* in New York litigation. When sued in New York, Seley could therefore have pleaded defensively that National had breached the lease and could not recover. *See Niederhauser v. Jackson Dairy Co.,* 213 Iowa 285, 290, 237 N.W. 222, 224 (1931); *Restatement (Second) of Contracts* § 237 (1981) (nonperformance as excusing other party's performance); 17 Am.Jur.2d *Contracts* § 446 (1964); 17A C.J.S. *Contracts* § 473 (1963). Seley did not do so, but let National take judgment. Under the New York decisions this constituted an adjudication against Seley which he cannot contradict in New York, or Iowa, by contending that National did not perform the lease. Seley is foreclosed by the New York judgment from recovering on the damage portion of his counterclaim.

■ B. We now consider the allegations of the counterclaim that National failed to give Seley credit on the New York judgment for the return of the machine and accessories. Shortly after the New York action was commenced, but before judgment was entered, National contacted Seley and inquired whether he would return the pipe bending machine and accessories. National proposed to sell the equipment and apply the proceeds against its New York judgment. Seley shipped the equipment back to National on August 23, 1978. The default judgment in National's favor was entered on September 1, 1978. The equipment was eventually sold on February 20, 1979. Seley received no credit, however, against the New York judgment. In his counterclaim Seley asserted that he was entitled to an amount equivalent to the value of the machine and accessories on the date of their return.

Although designated as a counterclaim, this claim is in the nature of a setoff. The anti-setoff clause in the contract does not

reach the setoff by Seley. The equipment was returned under a *subsequent* agreement for credit; if National could make such an agreement and then repudiate it on the basis of the *earlier* anti-setoff clause, National could work a fraud on Seley. The situation is analogous to clauses in contracts which are waived by subsequent conduct. *Hetherington Letter Co. v. O. F. Paulson Construction Co.*, 171 N.W.2d 264, 267 (Iowa 1969), *opinion supplemented*, 173 N.W.2d 575 (Iowa 1970); *Benson & Marxer v. Brown*, 190 Iowa 848, 179 N.W. 81 (1921).

As to issue preclusion, however, full faith and credit again requires that New York law be applied to determine whether Seley is barred from litigating the setoff in the Iowa action. The issue is whether the New York courts would preclude a second lawsuit concerning the availability of a setoff where the agreement giving rise to the setoff was made before judgment was entered in the first suit but the right to claim the setoff did not actually accrue until after the judgment was entered by virtue of the time reasonably necessary to perform the agreement.

■ New York courts hold that an initial judgment does not preclude future litigation concerning rights accruing after the first lawsuit. *Mullane v. McKenzie*, 269 N.Y. 369, 199 N.E. 624 (1936) ("The earlier decision may be a conclusive adjudication of the petitioner's rights, existing then; it cannot be an adjudication of rights thereafter conferred by law, or bar a new proceeding to vindicate new rights."); *Wood v. Fahey*, 62 A.D.2d 86, 403 N.Y.S.2d 807 (1978); *Commissioners of State Insurance Fund v. Low*, 285 A.D. 525, 138 N.Y.S.2d 437 (1955); *Buchholz v. U.S. Fire Insurance Co.*, 269 A.D. 49, 53 N.Y.S.2d 608 (1945); *Bedford Ice Palace v. Brooklyn Trust Co.*, 246 A.D. 734, 283 N.Y.S. 864 (1935); *Ripley v. Storer*, 1 Misc.2d 281, 139 N.Y.S.2d 786 (1955). According to one authority:

"However, where, after the rendition of a judgment, subsequent events occur, cre-

*ating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from serving as res judicata.* Thus, a judgment rendered in a suit for separation does not preclude the parties from basing a subsequent suit for an absolute divorce upon conduct or events occurring after the commencement of, or after the rendition of the judgment in, the suit for separation."

9 Carmody-Wait 2d *Judgments* § 63:219 (1966) (emphasis added). *See also 2 Freeman on Judgments* § 712 (5th ed. E. Tuttle 1925) ("But from the rule that an adjudication affects no claims which the parties had no opportunity to litigate, it results that no judgment or decree can prejudice rights which had not accrued to either of the parties at the time of its rendition.").

■ The question becomes whether Seley's right to claim a setoff had accrued before the entry of judgment in the New York action. Under the agreement National was to sell the machine and accessories and apply the proceeds against its New York judgment. The equipment was returned by truck one week before judgment in the New York action was entered. The record shows that National did not receive the equipment, make arrangements for sale, and ascertain the amount of the setoff within the space of one week's time. Seley's right to claim a setoff had therefore not matured at the time judgment was entered in the New York action. To preclude litigation on the availability of the setoff would require Seley to anticipate that National would breach its agreement at a time when National had not been given a reasonable opportunity to perform its obligation. We conclude that Seley would not be estopped in New York from litigating the availability of a setoff. The Iowa courts may therefore hear that claim without violating full faith and credit. Indeed, we do not understand National to claim the contrary.[1]

---

1. At the oral submission of the appeal the following colloquy occurred:

 Mr. Ford [National's attorney]: That concludes our argument unless the Court has questions.

IV. *Disposition.* The result is that National's New York judgment stands as an Iowa judgment, that the damage portion of Seley's counterclaim is untenable, and that the setoff portion of the counterclaim, however, is not precluded. We are unable to ascertain from the verdict of $12,000 for Seley what portions are attributable to damages and to setoff. The setoff issue will have to be retried.

 The parties disagree as to the amount of the setoff. National's attorney mentioned that the returned items were sold for $200 but an exhibit indicates $1800. Seley valued them at $10,000 at time of shipment. The burden will be on Seley to establish the proper *measure* to apply in valuing the items, according to an agreement of the parties or a governing rule of statutory or common law. Seley will also have the burden of establishing what the dollar *value* of the items is, under that measure.

When the value of the items is thus found by judge or jury, depending on how the issue is tried, that amount is to be deducted from the amount of National's New York judgment. If a balance remains in National's favor, National is to have judgment for that balance with interest from the date of the New York judgment and costs. But if the value of the items returned equals or exceeds the amount of National's New York judgment, National's petition is to be dismissed at its costs.

V. *Proof of New York law.* Applicable law of a foreign state is a *fact* in another state. *Restatement (Second) of Conflict of Laws* § 136 (1971). As in several other recent cases, the parties here seem to have lost sight of this rule, at least with respect to issue preclusion. *Iowa Kemper Insurance Co. v. Cunningham*, 305 N.W.2d 467 (Iowa 1981); *Berger v. General United Group*, 268 N.W.2d 630 (Iowa 1978); *Matter of Estate of Allen*, 239 N.W.2d 163 (Iowa 1976); *Peters v. Peters*, 214 N.W.2d 151 (Iowa 1974). In the trial court, New York law on issue preclusion was stated in a motion, by brief, and in a trial court ruling; and a New York treatise and decisions were likewise cited by brief. A similar situation exists in this court. The parties and the trial court proceeded as though New York law was before the court by judicial notice, and the parties proceeded similarly in this court. At no place, however, was New York law on issue preclusion actually proved as a fact.

Justice Uhlenhopp: I want to go back to that business of the return of that machine. I can't get that out of my mind. Esterville Ford did return the bending machine, didn't they?

Mr. Ford: It did ultimately, Your Honor, yes.

Justice Uhlenhopp: Now if we would reverse this and give you judgment for the full amount of the New York judgment, where would Esterville Ford get any credit for the machine that was returned?

Mr. Ford: That would have to be granted in another proceeding in a district court, Your Honor, in my opinion. I think it would be patently unfair for us to receive a judgment in the full amount of the New York judgment, but there would have to be a valuation hearing, I think as to what the value of the machine was. There was some controversy on that. The machine was ultimately sold by my client and this is not a part of the record, I'm sorry. But the machine was ultimately sold and they received something like $200 or something and it appeared to the defendant, the appellee, that there should have been more credit granted. I think that there would have to be a hearing on that.

Justice Uhlenhopp: Now would that be in this same case?

Mr. Ford: I think that this Court could direct the district court to have a hearing as to what credit should be granted, yes.

Justice Uhlenhopp: All right, then if we did that would we be violating the clause in the contract that there is no counterclaim or set-off allowance?

Mr. Ford: I think not, Your Honor. We certainly agree that some credit should be given. It would not become an issue in that case but we agree that it should happen. I don't think that that violates that provision of the Code.

Justice Uhlenhopp: Why not?

Mr. Ford: Well, then you would be requiring the appellee to try that issue in the state of New York and I think that would be unfair to the appellee. I think that the district court, if they are told to enter our judgment should be told also to have a hearing on the value of the machine, if proper credit allows entry of the judgment in its net amount.

Some states by statute, R. Leflar, *American Conflicts Law* § 130 (3rd ed. 1977), or by decision, *Prudential Insurance Co. v. O'Grady*, 97 Ariz. 9, 396 P.2d 246 (1964); *Choate v. Ransom*, 74 Nev. 100, 323 P.2d 700 (1958), have abolished the distinction between foreign law as persuasive authority which can be cited in briefs and judicially noticed, and *applicable* foreign law as fact, which must be proved in evidence. Those states permit judicial notice to be taken in both situations. In Iowa, however, rule 94 of the rules of civil procedure authorizes judicial notice of applicable foreign law only in the instance of foreign statutes referred to in a pleading by plain designation. Sections 622.59 to .61 of the Code provide a method of proving applicable foreign law as a fact.

 What happens when the parties and the trial court proceed as they did here—on the apparent assumption that the foreign law is before the court? We confronted a somewhat similar situation in *Peters*, 214 N.W.2d at 155:

> We also note the failure of either party to plead Texas law although they agreed Lela's annulment was governed by Texas law. She offered evidence to prove the applicable Texas law without objection by Bill that it was inadmissible because not pleaded. We ordinarily do not consider foreign law in the absence of pleading and proof. *Eddards v. Suhr*, 193 N.W.2d 113, 115 (Iowa 1971); rule 94, R.C.P. However, where as here the parties proceed without objection to try an issue not presented by the pleadings, it amounts to consent to try that issue "and it is rightfully in the case." *In re Estate of Millers*, 159 N.W.2d 441, 446 (Iowa 1968).

Perhaps closer to the present situation is *Berger*, 268 N.W.2d at 634–35:

> Some of the events complained of in this petition occurred almost 12 years ago. This action is more than two years old. There is no issue and no controversy concerning the Delaware law referred to in both briefs. If trial court committed error, the parties gave the court no chance to correct it. In this instance we

are inclined to dispose of this appeal on the issues framed and argued by the parties. We shall consider the Delaware statutory and case law referred to in the briefs. This decision should not be accepted as precedent for ignoring our rules of pleading or proof relating to foreign law, or our rules which confine the scope of inquiry on an R.C.P. 104(b) motion to dismiss a petition.

In view of the way the parties chose to try this case and in the absence of real disagreement as to New York law on issue preclusion, we have taken judicial notice of that law. We note, however, that a party pursues a risky course by proceeding in that fashion. The trial court or the opposing party may object and put him on his proof of applicable foreign law, under the general rule that such law is a fact.

REVERSED AND REMANDED WITH DIRECTIONS.